The Gulf, Colorado & Santa Fe Railway Co. v. Ed. Williams.

No. 6158.

1.   **Ordinary Laws of Nature.**—Railroad hands, as all other employes, are chargeable with knowledge of the ordinary laws of nature.   Weight and its effects in an instrument used by employes, when manifest, must be recognized, and an employe in possession of knowledge of the material and construction of an implement used in his employ can not complain that the ordinary laws of physics were not explained to him by his employer.

2.   **Sheffield Hand Car.**—It being shown that the Sheffield hand car is strong and well fitted for the purpose used, its mere want of weight as compared with others in use is not an obstacle to its introduction.

3.   **Novelty.**—That an instrument is new and requires a different kind of management on part of persons using it is no reason against its introduction, and an employe using such new machinery is charged with knowledge of its visible qualities and the ordinary working or effect of such qualities.

Appeal from Lampasas.   Tried below before Hon. W. A. Blackburn.

*Matthews & Wood,* for appellant. —1.   Reasonable care was exercised by defendant in the selection of the hand cars used on its road.   It is not therefore responsible for the injury.   I. & G. N. R. R. Co. v. McCarty, 64 Texas, 632; I. & G. N. R. R. Co. v. Hester, 64 Texas, 401; Ry. Co. v. Myers, 55 Texas, 110; Thomp. on Neg., 982–1053; De Forest v. Jewett, 19 Hun, 509; Gibson v. Pac. R. R. Co., 46 Mo., 163; Pierce on Railroads, 371–382.

2.   The dangers attending the use of the Sheffield hand car were patent.   The plaintiff knew or might have known them.   He could have avoided danger by ordinary care.   H. & T. C. Ry. Co. v. Conrad, 62 Texas, 628; R. R. Co. v. Doyle, 49 Texas, 190; R. R. Co. v. Drew, 59 Texas, 10; Ladd v. New Bedford R. R. Co., 119 Mass., 412; Huddleston v. Lowell

Machine Shop, 106 Mass., 282; Wright v. N. Y. C. Ry. Co., 25 N. Y., 566; De Forest v. Jewett, 19 Hun, 509.

*Acker & Abney* and *Smith & Walker*, for appellee.—1. The fitness of the hand car for the work was a question for the jury. Briscoe v. Bronaugh, 1 Texas, 329; Long v. Steiger, 8 Texas, 460; Gamage v. Trawick, 19 Texas, 58; Patton v. Gregory, 21 Texas, 521; R. R. Co. v. Parker, 50 Texas, 330; Brandon v. Manfg. Co., 51 Texas, 121; R. R. Co. v. Miller, 51 Texas, 270; R. R. Co. v. O'Donnell, 58 Texas, 27; Evansich v. R. R. Co., 61 Texas, 24; Reeves v. R. R. Co., 30 Pa., 454; R. R. Co. v. Jackson, 55 Ill., 492.

2. The employer is charged with the duty of providing suitable tools and machinery, etc., for employes. R. R. Co. v. Doyle, 49 Texas, 198; Combs v. Cord Co., 102 Mass., 572; R. R. Co. v. Sweet, 45 Ill., 197; Snow v. R. R. Co., 8 Allen, 441; Redfield Law of Rys., sec. 95, p. 111; Ib., sec. 131, p. 547.

3. The introduction of the Sheffield car was an innovation. The railway company took the risk and is liable for the injury caused by the change. Whart. on Neg., 2 ed., secs. 210 and 214; Shear. & Red. on Neg., secs. 29, 31, 95; Pery v. March, 25 Ala. (N. S.), 659.

4. The question of proper care by employes was one of fact. Johnson v. R. R. Co., 20 N. Y., 65; Wilds v. R. R. Co., 24 N. Y., 430; Huddleston v. Machine Shop, 106 Mass., 282.

5. It is the duty of the master to acquaint himself with defects in machinery. Servant need not seek for latent defects, and he may presume that an inspection as to fitness, etc., has been made by the employer. Whart. on Neg., 2 ed., sec. 210, and last paragraph sec. 214; Shear. & Red. on Neg., secs. 29, 31, 95; Snow v. R. R. Co., 8 Allen, 441; Huddleston v. Machine Shop, 106 Mass., 282; Patterson v. R. R. Co., 76 Pa. St., 389; Gibson v. R. R. Co., 46 Mo., 165; Ernst v. R. R. Co., 35 N. Y., 9–26; Mackay v. R. R. Co., Ib., 75.

Walker, Associate Justice.—This is an appeal from a judgment in favor of Williams for $2143 for personal injuries caused him by being thrown from a hand car while working as a section hand for appellant.

The petition alleges that plaintiff was thrown from the car on account of its being too light and frail for the purpose for which it was furnished; that the road where it was caused was rough; that the car was overloaded; that defendant knew the car was too light for the purpose it was furnished, and that plaintiff was ignorant of the fact.

Defendant pleaded general denial, and that if the car was too light that plaintiff knew the fact, if it was a fact, before the injury, and that the car was thrown from the track by the negligent manner in which it was handled at the time by plaintiff and his colaborers.

The only question raised is as to the sufficiency of the testimony to sustain the verdict.

There is no controversy as to the condition of the track; all witnesses concur that it was in good condition when the accident occurred.

Nor is there any dispute as to the condition of the particular car. It was not frail nor out of repair in any respect whatever.

It is insisted by appellee that the car was too light for the safety of the men using it and that this fact was determined by the verdict.

The plaintiff testified: "I was a section hand in an extra gang of twenty-four men employed by defendant in surfacing up and putting its new road in repair, and on returning to the section house in the evening after the day's work, the gang was using three light wooden-wheel hand cars furnished by defendant, known as 'Sheffield cars.' The men were about equally divided between the three cars. I have been railroading seven or eight years on track and bridge gangs, and during all that time have been accustomed to use and handle hand cars. The car I was on jumped the track, and I was considerably bruised up and had my arm broken. I never saw a hand car like the Sheffield until about two weeks before the accident. The foreman was on the front car. I was on the middle car, and all were traveling about the same speed, about four or five rails apart. I was pumping on the right hand side of the front lever. We had just reached the top of an up grade, on a curve of about thirty-six degrees. There was no racing. We were pumping the cars as usual when returning to supper after a day's work. The car ran off the track and threw every one off. * * * The car had only been in use there two days before the accident. I had never heard of any accidents from this car, and no one called my attention to the fact that the car was too light, and I was not competent to judge for myself. * * * Nothing was the matter with the track. I could see no cause for the accident unless the car was too light. I never knew it was too light before the accident occurred. I did not learn that the car was too light until the morning after the accident."

Pat Cullen testified: "I was on the rear of the three cars; had never seen any like them before; they had been there from two weeks to a month. The car ran off the track because it was too light. * * * As soon as we saw these new cars we thought them too light. As soon as we saw them we knew they were lighter than other hand cars, and any one with any judgment could see them paper wheeled cars, as we called them, were too light. * * * The heavier a car is the easier it is to stop."

Sam Moore testified: "I have been working on railroads about four years; these are the first cars of this kind I ever saw; * * * these were replaced by the old fashioned heavy iron wheel cars ten days after the accident; they took them away because they were too light; the hand

car jumped the track because it was too light and had too much weight on it."

Higdon testified: "I have been railroading as a civil engineer since 1870; never saw the wooden wheel car, but from the description I have heard of them would say they were too light for eight or ten men. A car is more apt to jump the track on a curve than on a straight track, and the lighter the car the greater the danger. Mr. Snyder, defendants' general manager, is a good man to run a railroad. * * * The greater the weight put on a light car the safer it is; the weight placed on a car increases the traction; the more men put on a hand car the less liable it is to jump the track; it increases the weight and makes it safer."

Dan Meagher, for defendant, testified: "When the hand car and the track are both perfect these cars are liable to jump the track when pulling up or down grade, because of the light weight of the car, it being so light that two men can pick it up and put it on or off the track, while six men are required to put on or off the heavy cars. * * * What caused the car to leave the track I am unable to say; I never saw one of this class of cars jump the track before, and have only seen one of them jump the track since, and that was at a frog."

Jim McGinnis, for defendant: "Have been railroading twenty-five years; am in employ of defendant; was on the front of the three cars. * * * The car jumped the track from awkward pumping, I suppose, as the track was in good condition; the wooden wheel Sheffield car is the safest hand car used."

Thos. Walthal, for defendant: "Have been working on railroads twenty years; am familiar with different kinds of hand cars; have used various kinds and have used the wooden wheel, iron rim hand cars known as the Sheffield cars. * * * I much prefer these lighter cars; they are more easily handled and hence safer, especially in avoiding collisions. The heavier you load a hand car the less liable it is to jump the track. * * * The Sheffield is an improvement on any other hand car I ever worked with; it is lighter than the old iron wheel car and is more liable to jump the track, but this is lessened in proportion to the load that is on it."

W. Snyder testified: "Am general manager of the road of defendant; am a railroad man by profession; have been in the employ of various railway companies ever since 1856. * * * The Sheffield car I consider one of the best now made or used anywhere and one of the safest on any kind of road, rough or smooth; my reasons are the car is much lighter in weight while equally as strong in construction as the ordinary car; to propel it does not require the power and consequent exertion and jerking that is necessary on a heavier car; easier propulsion assures smoother running; being lighter in weight it is easier to remove from the track in case of danger, which is not an unusual occurrence, and easier

to stop in the face of such danger; smooth running carries less liability to jump the track." (Witness testified to their use on other roads.) "These cars have been in use on defendant's road about two years; it is the intention to discontinue the use of the old style cars as they wear out and replace them by the Sheffield or similar one; * * * the Sheffield cars are unquestionably safer than the heavy hand cars on rough, new road; they will safely carry 5600 pounds with men added; the floor space is somewhat less, but as many can ride safely on them as on the heavy hand car."

J. W. Clark, for defendant: "Am in employ of defendant; civil engineer and trackman by profession; so employed since 1876. * * * That he considered the Sheffield hand car as the best hand car made; it combines all the good qualities necessary in a hand car—safety, speed, easy to handle, and strong; is the best car for rough track, as it is propelled easy, runs smooth on a good track, and runs fast with safety when it becomes necessary in case of trouble to do so. * * * They are now in use all over the road without regard to condition of track, and are sent out to any and all sections where new hand cars are needed."

J. W. Thorne: "Am purchasing agent for defendant. * * * The Sheffield cars are built of good material, well braced, and are thoroughly suitable for the purpose for which they were purchased. They were first used on defendant's road about last of August, 1885, and before being issued for service were examined by me personally; they were purchased at suggestion of manager Snyder. * * * The advantage of the light car is that it requires less force to run it over heavy grades, and it can be moved from the track more expeditiously than the heavy car. * * * I have never heard any one claim or state that they are not safe."

This witness gave the names of fifty railroads upon which the Sheffield cars are in use.

Dan O'Brien, for defendant, testified that he was on the hand car with plaintiff when injured; six men were on the car at the time. "I do not know of any cause why the car was thrown from the track unless it might be that it was run at too high speed." He also states "that they were not going faster than they were accustomed to go."

From this testimony we may well question whether the hand car was defective. No witness for plaintiff indicates anything against it except that it was too light. The testimony abundantly shows that the style of car was selected with reference to the safety of persons using the cars; and that in the general use to which they are applied that the Sheffield car was considered an improvement over those in ordinary use prior to their introduction, and was adopted on that account.

But should it be conceded that by reason of its lightness the car was more liable to jump the track, while the company would be chargeable with knowledge of the defect from its duty to furnish fit and suitable implements and machinery for its employes, can it be ascertained from

the testimony that the plaintiff was ignorant of the supposed defect? He testifies that he had seen the cars two weeks. They are of simple structure. Their material was not concealed but apparent. The witness Cullen, a colaborer called by plaintiff and who was with him when hurt, says: "As soon as we saw these new cars we knew they were too light." The plaintiff testified that he did not know of the danger from using the cars; that no one told him and he was not competent to judge himself. He is shown to have been a railroad hand of several years experience. He, as all others, must be charged with the knowledge of the ordinary laws of nature. His experience would be of negative value if it left him unable to recognize in the machinery he uses the qualities of weight and its effects as an instrument has greater or less of it. If the car was too light the plaintiff had the means of knowing the fact, and he can not complain that the ordinary laws of physics were not explained to him. That a light body is more easily deflected from its course than a heavy one should be known to every one handling machinery. Ry. v. Bradford, 66 Texas, 736.

This is not a case of an inexperienced servant entering upon a dangerous service from which the duty devolves upon the master to give caution as to the danger. 64 Texas, 570, Ry. v. Watts. Nor is it a case of defective machinery where the defect is apparent but the danger hidden or remote in its connection with the defect. The defect and its danger, if any, are necessarily presented together to any one using the hand car. 59 Texas, 23, Railway v. Lempe.

The servant assumes to have sufficient knowledge and skill to perform the duties he undertakes and is chargeable with ordinary care of himself in his service. In traveling upon and propelling a hand car he is chargeable with adapting himself in its use to the apparent condition of the machine. If light, he must deal with it as light; if heavy, the fact must be recognized.

While recognizing fully the duty of the employer to furnish safe implements for its employes in their work, we do not find in this case a state of facts which could support the verdict. It is clearly manifest that the alleged defect, if it be one, was known, and that the danger from it, if any, should have been known to plaintiff by the ordinary exercise of his judgment upon what was apparent in it.

Referring to the testimony we may remark that it shows an effort on the part of a competent manager to introduce into use upon the road an improved style of hand car—one considered to be better adapted for the purposes which such cars are used and in some respects safer than those in use. The objection appears to have been rather to its novelty than to any other cause.

It is observed that in the opinions of the operatives there is some confusion. One styles the new car too light, but that its liability to jump

the track will be increased by being more heavily loaded.    Another thinks the heavier car can be stopped quicker in presence of danger, etc.

If aversion to change and refusal to adapt the mode of handling to the conditions of the new machinery be sufficient reason for rejecting an improvement none can ever be made with safety.    The claim here is made, and it seems to be the *only complaint* in fact separated from opinions, that the hand car should have a given amount of dead weight, without regard to its safety in other respects or its equal or greater fitness for the usual work for which a hand car is used.

The "Sheffield car" had been but lately introduced when the accident occurred.    Upon another trial the merits or absence of merit in the machine with respect to the personal safety of persons using it can be more satisfactorily shown — the results of a larger experience can be had.

The testimony showing that plaintiff knew or should have known the lightness of the car, and it not sufficiently appearing that it was defective, the verdict was without evidence of proper care on part of plaintiff, and it should have been set aside.    Judgment reversed and cause remanded.

*Reversed and remanded.*

Opinion November 30, 1888.