### Missouri, Kansas & Texas Railway Co. et al. v. Scott Thompson.

#### No. 946.

**1. Master and Servant—Defective Apparatus—Negligence.**

Where a brakeman was injured while uncoupling cars, and the only evidence of a defect in the coupling apparatus was that the coupling pin stuck fast in the drawhead, and it was not shown how long such defect, if any, had existed, or that the railway company knew of it, or by the use of reasonable diligence might have known of it, the court should have charged, in an action for such injury, that there was no sufficient evidence to establish negligence on the part of the defendant company by reason of any defect in the coupling apparatus, or by reason of the pin sticking in the drawhead.

**2. Same—Assumed Risk.**

Where a brakeman and yard switchman has worked nearly two months in the yard of a railway company using unblocked guard rails at its switches there and generally throughout that State, he will be held to have assumed the risks incident to the use of such unblocked guard rails.

**3. Law of Forum—Action for Personal Injuries.**

In an action of damages for personal injuries, based on a common law right, and brought in Texas, the domicile of both parties and the place of the injury being in another State, the case must be determined by the rules of the common law as interpreted by the courts of Texas, and not those of such other State.

**4. Foreign Law—Request for Charge.**

Where the law of another State may be applicable, the court should be requested to charge it, in order that error in failing to so charge may be available on appeal.

Appeal from Grayson.  Tried below before Hon. Don A. Bliss.

*Foster & Wilkinson,* for appellants.—1.  The negligence of defendant cannot be inferred from the fact of machinery being defective, unless the defect is shown to be of such a character and to have existed for such a length of time as to afford a basis for such inference. Railway v. Kizziah, 23 S. W. Rep., 578-581; Railway v. Barrager, 14 S. W. Rep., 242-243; Trinity Co. Lumber Co. v. Denham, 85 Texas, 60; 16 Am. & Eng. Encycl. Law, 448, note 3, 449, and note; Wood, Master & Servant, sec. 368; Pierce on Railroads, 382, 383, note 5; Black, Plead. & Proof of Neg., 25, 26, 27, secs. 18, 19, and notes; Cooley on Torts, (2 ed.) 798, note 1; Railway v. Thomas, 42 Ala., 672; Duffy v. Upton, 113 Mass., 544; Case v. Railway, 19 Am. & Eng. Ry. Cas., 142; Railway v. Allen, 28 Am. & Eng. Ry. Cas., 514; Railway v. Stewart, 21 Am. & Eng. Ry. Cas., 616; Railway v. Locke, 2 Am. St. Rep., 207 (112 Ind., 404); Whart. Neg., secs. 421, 422; 2 Thomp. Neg., 1220 et seq.

2. Where negligence is to be inferred, it must be from facts proven, and cannot be inferred from facts inferred from other facts. Railway v. Porter, 73 Texas, 304; Railway v. Nicholson, 22 S. W. Rep., 770; United States v. Ross, 92 U. S., 284; Railway v. Henrice, 92 Pa. St., 434; 37 Am. Rep., 699; Lawson, Presumpt. Ev., rule 118, p. 569; Black, Plead. & Proof in Neg., 11, 12; 16 Am. & Eng. Encycl. Law, 450, note.

3. Risk of injury from defects or causes obvious or open to common observation, is assumed by the servant. Rogers v. Railway, 76 Texas, 503; Railway v. Lempe, 59 Texas, 23; Railway v. Fowler, 56 Texas, 460; Railway v. McNamara, 59 Texas, 258; Rush v. Railway, 28 Am. & Eng. Railway Cas., 484 (36 Kan., 129); McGinnis v. Canada South Bridge Co., 8 Id., 135; Railway v. Londergan, 28 Id., 491; Railway v. Davis, 26 Am. St. Rep., 48 (54 Ark., 389); Railway v. McCormick, 5 Am. & Eng. Ry. Cas., 474 (74 Ind., 440); Wilson v. Railway, 31 Am. & Eng. Ry. Cas., 244; Patterson's Railway Acci. Law, 345; Cooley on Torts, (2 ed.) 636, note 1; Wood, Mast. & Serv., secs. 335, 362, 363, 376; Stroble v. Railway, 28 Am. & Eng. Ry. Cas., 510.

4. The court erred in failing to instruct the jury that the case as to plaintiff's right to recover was governed by the law of Kansas, and that under such law plaintiff could not recover by virtue of the facts proved in this case. Willis v. Railway, 61 Texas, 432; LeForest v. Tolman, 19 Am. Rep., 400; Whart., Conflict of Laws, secs. 477, 478; Cooley on Torts, 471, (1 ed.); Rush v. Railway, 28 Am. & Eng. Ry. Cas., 484 (36 Kan., 129).

*C. B. Randell* and *J. A. L. Wolfe*, for appellee.

LIGHTFOOT, CHIEF JUSTICE.—The statement of the case by appellants is substantially correct, and is adopted, as follows: This action was commenced March 1, 1892, by Scott Thompson against the Missouri, Kansas and Texas Railway Company, and the Missouri, Kansas and Texas Railway Company of Texas, in the District Court of Grayson County, to recover damages for personal injuries received by plaintiff September 27, 1891, the amount of damages claimed being $30,000.

Plaintiff alleged that on that date he was in the employ of the first named company as a switchman at Parsons, Kansas, and was injured while at work in the night time, in endeavoring to uncouple cars, near the defendant's depot at Parsons, by having his foot caught in an unblocked guard-rail of a switch in defendant's yards, and run over by a moving car, causing amputation of his leg. He alleged negligence in the construction of the coupling apparatus of the cars, in the depot platform, in the absence of lights, and in the failure to block the guard-rail.

He claimed to recover against the Missouri, Kansas and Texas Ry. Co. of Texas by reason of its acquisition of the lines of the first named company within the State of Texas, under the act of the Legislature authorizing the conveyance of these lines to a corporation to be created for

that purpose, approved April 16, 1891, alleging that by the terms of said act, the new company received said lines of railway charged with all liabilities, debts and demands against the old company.

The defendant Missouri, Kansas and Texas Ry. Co. of Texas answered by a general denial, and plead specially that the injuries complained of were received in the State of Kansas, while in the service of the Missouri, Kansas and Texas Ry. Co., and not upon any portion of the lines acquired by the Texas company; that the Missouri, Kansas and Texas Ry. Co. owned and operated a line in the State of Kansas, running into the city of Parsons, Labette County, where the principal office and domicile of said corporation was situated, the same being a company created by the laws of the State of Kansas; and that by the common law prevailing in the State of Kansas, as interpreted by the courts of that State, as applied to the facts involved in this case, the danger from unblocked guard-rails was one assumed by plaintiff as an employe, he having had opportunity to know that they were not blocked.

The Missouri, Kansas and Texas Railway Company presented a plea to the jurisdiction, alleging that it was incorporated by the State of Kansas, and maintained its principal office at Parsons, Labette County, Kansas; that plaintiff was a resident citizen of said county and State, and the cause of action there originated, and the domicile of both plaintiff and defendant was there; and that it did not own or operate any line within the State of Texas, nor do business within said State. The plea was verified by affidavit. It also plead a general denial, and a special plea as to the laws of the State of Kansas, similar to that set up by its co-defendant. Upon trial of the case, October 14, 1893, plaintiff recovered a verdict and judgment in the sum of $7045, from which this appeal was taken.

It appears from the undisputed evidence, that September 27, 1891, plaintiff was in the employ of the Missouri, Kansas and Texas Ry. Co., at Parsons, Kansas, as a switchman and brakeman. He went down with the switch engine to some tracks on the west side of the passenger depot to get out some cars, and was in the act of pulling the pin between two furniture cars on the track next to the depot platform. The space between the rail and the platform was too narrow to walk in, and he stepped inside the rail between the cars; the pin was fast in the draw-head and he could not draw it back, and walked between the cars, which were in motion, some twenty feet, when his foot was caught between the rail of the track and the guard-rail of a switch, and before he could extricate it, the wheel of the car behind him ran upon and crushed his foot.

The appellants do not seem to rely in this court upon the plea to the jurisdiction filed by the Missouri, Kansas and Texas Ry. Co., or upon the defense set up by the Missouri, Kansas and Texas Ry. Co. of Texas, that the injury occurred in the State of Kansas before the latter company was organized, as the facts relied upon to sustain such defenses have not been brought before us.

1. Appellant's third assignment of error is as follows: "The court erred in refusing the second instruction requested by defendant, and in giving the charge to the jury in the eleventh paragraph of its instructions, whereby it submitted to the jury the question whether or not the coupling pin, link, drawhead and other coupling apparatus were defective, and whether or not defendant had used ordinary care to furnish reasonably safe coupling pin, link, drawhead, or other coupling apparatus, for the reason that there was no evidence that such coupling pin, link, drawheads or other coupling apparatus or either or any of them were defective, or that, if defective, defendant had been negligent in respect thereto, or had any knowledge of the defect, or had opportunity to know of the same; nor was there any evidence that the nature of the defect, if any existed, was such as to imply such negligence on the part of the defendants, or that it had existed for such length of time that defendants could be presumed to be negligent in failing to discover and remedy it."

The second instruction requested by defendants, and which was refused by the court, is as follows: "There is no competent evidence in this case to warrant the jury in finding that the link, pin, drawhead or coupling apparatus of the cars with which plaintiff was at work were defective, or, if defective, that defendant was negligent in failing to discover and remedy such defect, and you will not consider any evidence as to the pin being stuck in the drawhead as evidence tending to establish a liability of defendant for negligence with respect to such coupling apparatus."

The court instructed the jury in the eleventh paragraph of its charge as follows: "If you believe from the evidence that the plaintiff was in the employment of the defendant, The Missouri, Kansas and Texas Railway, as a switchman and brakeman at its yards in Parsons, Kansas; and if you believe from the evidence further that while performing his duty as such switchman and brakeman, exercising due care, he had his foot caught in an open guard-rail, that is, a guard-rail having no block between it and the other rail that would prevent a person's foot from being caught between said guard-rail and the other rail; and if you believe further from the evidence that his foot was so caught while he was attempting to uncouple some cars of said defendant, and that while his foot was so caught and before he could extricate it, the same was run over and crushed and mangled by the said defendant's car or cars; and if you believe further from the evidence that said guard-rail so constructed was not reasonably safe; and if you believe from the evidence further that the coupling pin, link, drawheads or other coupling apparatus of the two cars he was attempting to uncouple was or were then and there defective and not reasonably safe nor suitable for their purpose; and if you believe further from the evidence that the said defendant had not exercised ordinary care to have said guard-rail properly constructed, so as to be reasonably safe, and had not used ordinary care to furnish suitable and reasonably safe coupling pin, link, drawheads and other coupling apparatus for said cars; and if you believe further from

the evidence ˜nat such defective, unsuitable and not reasonably safe condition of said guard-rail, coupling pin, link, drawheads or other coupling apparatus caused plaintiff's injury, you will find for the plaintiff against both defendants, unless you find for the defendants under instructions hereinafter given you."

The first part of the second charge above, as requested by appellants, was too strong, in this—it sought to instruct the jury that there was no competent evidence to warrant them in finding that the link, pin, drawheads or other coupling apparatus of the cars were defective. There was no direct testimony upon that point further than the fact that the pin was fastened, and we are not prepared to say that from the facts and circumstances, if unexplained, the jury might not have been justified in drawing the inference that they were defective. But, even if this was true, they would not have been justified in drawing from such inference, the further inference that such link, pin, drawheads or other coupling apparatus had been in that condition a sufficient length of time to justify the conclusion of negligence on the part of the company. There was no evidence showing or tending to show how long the pin had been in that condition, the cause, or that the company or its officers knew of it, or that by the use of ordinary care they could have known it. The mere fact that the pin was fastened in the drawhead would not, of itself, be sufficient to establish negligence on the part of the company. The requested charge was sufficient to draw the attention of the court to the question, and the jury should have been instructed that there was no sufficient evidence to establish negligence on the part of the company by reason of any defect in the coupling apparatus, or by reason of the pin sticking in the drawhead. The jury could not from the mere fact that the pin stuck in the drawhead, draw the inference that the apparatus was defective, and then base upon that the further inference that the officers of the company knew it, or by the use of ordinary care could have known of it, and that hence the company was negligent. This would be basing one inference upon another, which cannot be done. The substantive fact necessary to be established was that the company was negligent. In order to reach this conclusion by reason of defects in the coupling apparatus, drawhead, link or pin, it was necessary to show such defects, and the further fact that the company knew of them, or by the use of ordinary care could have known. We have the fact that the pin stuck in the drawhead; how it happened to stick there was not shown; how long it had been in that condition was not shown; that the company knew of it, or could have known, was not shown. We are asked to presume that the pin stuck by reason of a defect, and to further presume that such defect was known by the company.

The rule upon this point has been clearly stated by the Supreme Court of Pennsylvania, as follows: "A presumption should always be based upon a fact, and should be a reasonable and natural deduction from such fact. The true rule was correctly stated by Mr. Justice Thompson, in Douglas v. Mitchell, 11 Casey, 443, 'That as proof of a fact, the law

permits inferences from other facts, but does not allow presumptions of fact from presumptions. A fact being established, other facts may be and are often ascertained by just inferences. Not so with a mere presumption of a fact; no presumption can with safety be drawn from a presumption; there being no fixed or ascertained fact from which an inference of fact might be drawn, none is drawn.'" Railway v. Henrice, 92 Penn. St., 434.

This rule has been adopted by our Supreme Court, where Judge Gaines says: "The circumstances themselves must be shown by direct evidence, and can not be inferred from other circumstances. It is not admissible to go into the domain of conjecture, and to pile one presumption upon another." Railway v. Porter, 73 Texas, 307, and authorities there cited.

2. The appellants complain under proper assignments that the court refused to give to the jury the following special instruction: "Plaintiff, by entering into defendant's service and remaining for the space of one month and more in its employ, upon its yards at Parsons, assumed the risk of such dangers as were incident to the use of its guard‚rails, tracks and switches and the location of the same with reference to its platforms and other structures, so far as the same were obvious or readily discernible by examination. It was his duty to examine and know the situation, construction and relation to each other of such objects and he assumed the risk, if any, of injury by any perils arising from the failure to block guard-rails, or the nearness of the platform to the track on which he was required to perform his work, not only so far as the same were known to him, but so far as the same were patent, obvious or discernible by ordinary examination."

The court refused the above requested instruction, and charged as follows, which is also assigned as error: "However, an employe of a railway company has the right to assume that the platform, guard-rails, switches, tracks, coupling pins, links and other coupling apparatus, furnished by the railway company, are reasonably safe, and he is not bound to inquire into the matter, but if he knows that such are unsafe and defective, or if they are so clearly defective or unsafe that any man of ordinary prudence, after having opportunities to perceive their condition, would ascertain the same, then, if such employe knew such condition, or, after having opportunities to know such condition of said things, receives an injury caused by such defective or unsafe condition, he can not recover, as in such a case he is deemed in law to have assumed the risk; in this connection, though, you are instructed that the employe of a railroad company assumes the risk of injury from defects and unsafe things that he knows of, or from defects and unsafe things that a man of ordinary prudence would know, after having had opportunities to know; only he does not assume the risk of injury from a defect or an unsafe condition that he knows nothing about, or that he has had no opportunity of knowing."

It appeared from the testimony that all the guard-rails on the Mis-

souri, Kansas and Texas yards at Parsons were unblocked, and that the same was true of the guard-rails generally upon its system in the State of Kansas. It further appeared that a block is simply a wedge of wood driven in between the guard-rail and the track to prevent a man's foot from being caught, and whether the guard-rail is blocked or not is an open, patent fact which may be readily ascertained by ordinary observation.

Plaintiff's own testimony showed that he had been working one month and twenty days in the yards at Parsons at the time of the accident, about half of the time during the day and about half of the time during the night. His duties were catching and coupling cars in what was called the outside yard; the yards were about a mile long, and he was at work in the middle part of the yard, away from the switches. He testified that he did not know at the time of the accident that the company did not block their guard-rails; had noticed that their guard-rails at Nevada, Missouri, were blocked seven or eight years before he was hurt. Blocking guard-rails was a device which had been in use for a number of years by a great many railroads, to prevent men from getting their feet caught in the guard-rail or frog. Plaintiff did not know that the guard-rail was there; the accident occurred in the dark; his attention had never been called to the guard-rail. He had never worked at the point of the injury before; had been engaged in switching for nearly twenty years, in switching, braking and running trains. Was familiar with the work of coupling and uncoupling cars; had worked on roads that blocked their guard-rails and those that did not; the guard-rail was a rail placed inside of and next to the rail farthest away from the frog, and about eighty or ninety feet away from the switch, which is the lever which connects the rails and throws them into position; the frog guides the car on the right track, and the guard-rail is to keep it from jumping off; the switch was where the rails come together, and the guard-rail opposite the frog where they cross. On the night plaintiff was injured he was working as foreman, and had been for two nights; he had never noticed the guard-rails, paid no attention to it; had never occurred to him to notice them; it was a thing that was easily discoverable; witness knows now that none of them were blocked, but did not know then whether they were or not. It was usual to have the guard-rail to protect frogs; the presence of a side-track and switch would fairly imply the presence of a guard-rail. At the time of the injury plaintiff was switching out some cars to take up on the "hill." There were yards called the "lower yards," south of the depot, and the "upper yards," north of the depot, the latter being those where plaintiff made up trains; the cars for these trains were generally switched out and thrown in on the scale south of the depot; plaintiff would go down and get them and place them in the trains up on the "hill"; they were not brought to the "upper yards" for him. He would go down there sometimes two or three times a day and sometimes only once. Trains coming in from the south would stop in the lower yards, there the middle engine would shove the cars to

where he came to get them; the usual place where he got them was about the depot; he got the cars on this occasion off the track known as the "Cherokee" track; went into the north end of the Cherokee track after the cars, pulled them out of the north end of the Cherokee track and shoved them south on the main track past the depot; was un-coupling some of the cars that he did not want to take to the north yards, in order to leave them there, intending to throw them in on the house track; had got them off the Cherokee track, was shoving them down the main track, and was intending to put them on the house track and take the others to the north yard. Had been foreman several nights, and it was necessary for him to direct the work; was necessarily familiar with the places he wanted to take the cars to, and knew where the tracks and switches were; the passenger depot was a very public place, and plaintiff and everybody that lived in Parsons was familiar with it; he had passed there frequently on the cars while he was at work, sometimes three or four times a day, sometimes only once. Could not say that there was a day passed that he did not go there after cars."

Appellee was an experienced railroad man; and after remaining in the company's service for a month and twenty days, during all of which time he was engaged in switching upon the yards, every switch having a guard-rail, if it was patent to the observation of any ordinary man who would look at it that it was not blocked, such an employe could not as-sume that it was blocked when it was obvious and patent that it was not, but would assume the risk of such condition. It was his duty to know the obvious and patent condition of the guard-rails. It is true that an employe generally has the right to assume that the machinery and apparatus furnished by his employer are reasonably safe, but he can not assume a state of facts which ordinary observation would teach him does not exist.

It appears from the evidence that railroads generally use guard-rails; they are very common, and the presence of a switch fairly implies a guard-rail. Some roads use them blocked and some unblocked. If the fact that they are or are not blocked, is open and patent to ordinary observation, an employe can not shut his eyes to such plain and ob-vious condition and say that he did not know it. He was working with and handling the switches every day, and testified, himself, that the presence of a switch fairly implied a guard-rail, as they were used in connection with the switches. It was shown that none of the guard-rails of this company were blocked. Whether he knew of the condition of the particular guard-rail at which he was injured would not matter; if he knew the general condition of the road in that respect. Green v. Cross & Eddy, 79 Texas, 132; Railway v. Somers, 71 Texas, 700. See also, Railway v. French, 86 Texas, 96; Railway v. Bradford, 66 Texas, 832; Railway v. McCarthy, 83 Texas, 144; Railway v. Williams, 72 Texas, 159.

We cannot say that the charge should have been given in the words re-quested by appellants, for the reason that such requested charge makes

it the duty of the employe "to examine and know the situation, construction and relation to each other of such objects" as are mentioned. The law does not impose upon the employe the duty of especially examining the track and appliances, but only holds him to the duty of observing such as are open to ordinary observation, and he is held to have assumed the risks of such dangers as were incident to the use of guard-rails, tracks and switches and the location of same with reference to platforms and other structures, so far as the same were obvious and readily discernible by such ordinary observation. The charge of the court as given, though in the main correct, yet in this case, was calculated to mislead the jury in this—the condition of the guard-rails being unblocked was general upon appellant's road. Appellee was an experienced railroad man who had been working every day and every night with these switches and near these guard-rails for many weeks, and if he knew of this general condition, or if it was obvious and patent to ordinary observation, he assumed the risk of injury from such condition, whether he knew or had the opportunity of knowing that the particular guard-rail in which he was injured had been blocked or not. Green v. Cross, supra.

In the case of Railway v. Bradford, 66 Texas, 734, our Supreme Court lays down the rule governing the liability of the employer, as follows: "The liability of the master to the servant for injuries resulting from the use of defective implements arises from the fact that it is the duty of the master to furnish implements not defective, and a servant, unless defect be patent, may assume that the master in this respect has performed his duty; but when he has knowledge that the master has not done so, if he continues in the employment in which such defective implements are used, he must, ordinarily, be held to assume the risk incident to the service as it is attempted to be carried on, and not to assume only the risks incident to such service when carried on with implements not defective of their kind and suitable to the work undertaken. * *. * It is not the duty of a servant to assume and exercise the duties of an inspector that he may detect imperfections in implements not open to common observation, but if he knows of such imperfections, then it is incumbent upon him not to expose himself to dangers resulting from them; and if, after such knowledge, he exposes himself to such dangers, it must be held that he assumes the risk of receiving injury from the known defect, although the master, as well as the servant, had knowledge that the defective implement was used in the business."

The Supreme Court of Arkansas in case of Railway v. Davis, 54 Ark., 389 (26 Am. St. Rep., 48), which was somewhat similar to this, says:

"Whether the defendant would have promoted the safety of its operatives by substituting upon its road blocked for unblocked frogs, and whether its duty of reasonable care exacted this, are questions that can not affect the result in this case. The plaintiff charges negligence in the use of unblocked frogs, not because they were badly constructed, out of repair, or exposed operatives to latent dangers, but because a different kind of frog would have been less dangerous to operatives

frogs were in universal use on the roads in this State, including the entire road of the defendant. The injured employe knew when he entered the defendant's service, that its frogs were unblocked; and if there was danger in their use, he knew that it was an incident to the service he was entering. When a master employs a servant to do a particular work with a particular kind of implement or machine, he agrees that they are sound and fit for the purpose intended, so far as ordinary care and prudence can discover, but does not agree that they are free from danger in their use. The servant agrees to use in the service the particular kind of instrument or machine, and if, under such circumstances, harm comes to him, it must be ranked among the risks he assumed when he entered the service. Railway v. McCormick, 74 Ind., 447; McGinnis v. Canada S. B. Co., 49 Mich., 722; Diehl v. Lehigh Iron Co., 140 Pa. St., 487. Such is the express holdings of the courts of Massachusetts, Illinois and Kansas in cases in which the negligence charged was in the use of unblocked frogs. Railway v. Lonergran, 118 Ill., 41; Wood v. Locke, 147 Mass., 604; Rush v. Railway, 36 Kan., 129; and this court so ruled in the case of Davis v. Railway, 53 Ark., 117. See Grande v. Railway, 83 Mich., 564."

3. The fifteenth assignment of error is as follows: "The court erred in giving to the jury the eighteenth paragraph of its charge, wherein they were instructed that said charge gave the law of Kansas applicable to the facts, as well as the law of Texas, and in failing to instruct the jury that the case as to plaintiff's right to recover, was governed by the law of Kansas, and that under such law plaintiff could not recover by virtue of the facts proven in this case."

The appellant introduced evidence to prove that in the State of Kansas it was held by the decisions of the Supreme Court, that where an employe of a railway company had been working in its yards for sixty days and was injured by getting his foot caught in an unblocked frog or guard-rail, that he was presumed to know the condition of such guard-rail, and assumed the risk incident thereto. It was also shown that appellee resides in that State, was injured there, and the principal shops and offices of the Missouri, Kansas and Texas Ry. Co. are there. Appellee testified that, "the reason I brought this suit in Texas was because I thought I could get a more fair and impartial trial there."

It has been generally held that in transitory common law actions for damages for personal injuries, the plaintiff may bring his suit wherever the wrongdoer may be found. The suit being brought in Texas, and being based purely upon a common law right, if the wrongdoer is in this State, the case must be determined according to the rules of common law as interpreted by the highest courts of our own State. But if this were not true, appellant not having asked a charge upon the subject, cannot be heard to complain at the failure of the court to charge specially upon the laws of Kansas.

For the errors of the court above indicated, the judgment is reversed and the cause remanded.                *Reversed and remanded.*

Delivered November 23, 1895.