TRINITY & BRAZOS VALLEY RAILWAY COMPANY v. W. L. PERDUE.

Decided March 30, 1907.

**1.—Personal Injuries—Assumed Risk.**

A servant who, without protest, continues in the employment of the master after he has learned, or in the exercise of ordinary care should have learned, of a defect in the machinery or appliances furnished for his use, assumes the risk resulting from such defect.

**2.—Same.**

In a suit for personal injuries resulting from a defective coupling, evidence reviewed and held to show that plaintiff knew of and, without protest, continued to use the defective appliance, and hence assumed the risk incident to its use.

Appeal from the District Court of Limestone County. Tried below before Hon. L. B. Cobb.

*Andrews, Ball & Streetman* and *Williams & Bradley,* for appellant.

No briefs for appellee.

TALBOT, Associate Justice.—This suit was brought by appellee to recover damages resulting to him from personal injuries alleged to have been received through the negligence of appellant. It was alleged, in substance, that, on August 21, 1905, appellee was in the employ of appellant, serving it as a brakeman on one of its mixed trains; that in said train was a caboose which was so negligently constructed as to render same dangerous to the employes working about it. That said caboose was provided with a coupling lever which consisted of an iron rod so bent at one end as to lift a pin attached to it by means of a chain, and at the other end so bent as to furnish a handhold to be used in lifting out and replacing the pin in making couplings; that the coupling lever was fastened to the lower part of the end beam and said caboose in such a careless manner that the end of it, to which the chain of the pin was attached, "so drops down and catches in the hole provided in the drawhead of the car for the pin, that in making a coupling the spring of the drawhead" moves said lever so that the handhold is drawn against the end beam of the car, so as to catch the hand of a person attempting to make a coupling and injure him; that this defective condition of the coupling apparatus was known to appellant and unknown to appellee before the injury alleged. That on said 21st day of August, 1905, while appellee was in the discharge of his duty, he attempted to couple the engine to said caboose and was injured; that the engine was backed to the caboose and appellee caught the coupling lever with his left hand and lifted the pin to make the coupling, but the end of the rod caught in the hole in the drawhead and the handhold of the coupling lever caught appellee's hand and cut off one of his fingers. It was further alleged that appellee was an experienced railroad man of seven years experience.

Defendant pleaded a general denial, contributory negligence on the part of appellee and specially that he was an experienced brakeman; that it often became his duty to couple the caboose in question to other cars, and he had often done so before the injury; that appellee knew the condition of the said coupling lever and if it was defective he knew it; that, such defect was obvious, and by remaining in the service of appellant, with such knowledge, appellee assumed the risks incident to the use of said coupling lever and could not recover. A trial before the court and jury resulted in a verdict and judgment for appellee in the sum of $1,500, and defendant appealed.

The first assignment of error complains of the court's refusal to give a special charge requested by appellant, directing the jury to return a verdict in its favor. We are of the opinion that this charge should have been given. The undisputed evidence establishes conclusively that appellee, for a number of months before he was injured, operated the coupling apparatus, with which he attempted to make the coupling when hurt, and knew of its defective condition; that such condition was obvious and the danger incident to its operation apparent to him. Appellee testified: "I was working as a brakeman on appellant's freight train on the date of the injury and had been so engaged about a year. The engineer was operating the engine. I gave him a

slow-up signal and about half a car length from the caboose, which was standing, I jumped off and ran to make the coupling of the engine to the caboose. I was acting in my line of duty as a brakeman in doing so. When I got to the caboose I took hold of the handhold or lift rod of the coupling lever to prepare to make the coupling. The other end of the lever, to which is attached the chain leading from it to the coupling pin, hung in the hole of the drawhead, and it would not work, and the tender of the engine came in contact with the caboose and the contact of the two caused the handhold to be pressed against the end beam of the caboose and cut the front finger of my left hand off between the first and second joints. The horizontal bar of the coupler was placed too low down on the end of the end sill of the caboose, so that it let the end of the lever to which the coupling chain was attached get down in the end of the drawhead. It should have been fastened on top of the end sill, so as to raise the chain end of said lever higher where it could not get into said hole, as it did in this case. I have been railroading in this State five years. I was an experienced brakeman when I began work for defendant. I broke for it as a member of Conductor Bennett's crew about a year. The defendant did not have but two cabooses, the one I was injured on, No. 02, and No. 01. The coupling apparatus on both were about the same construction, may be a little better on No. 01. We used No. 02 about all the time. I had been coupling cars to it along all the time, but it had been in the shops and had been out only about fifteen days when I was injured. We made a round trip from Mexia to Hillsboro and return each day, and frequently had to couple cars to this caboose. I caught hold of the lever below the edge of the end sill and started to lift it to make the coupling and the other end caught in the hole in the drawhead, and the tender struck it and caused the end I had hold of to press against the end sill and cut my finger off. It got caught this way, that is, the end of the lever did about half of the time. There was nothing to prevent me seeing how the coupling lever was attached to the end beam or the place, nor to prevent me seeing where the handhold struck and made the niche and indentation on the end sill and end of the step. You can see in the picture there the niche in the lower edge of the sill and an indentation in the end of the step, where the handhold end of the coupler strikes when couplings are made, just like they are on the car. I was looking at the couplings when the caboose and tender came together."

J. S. Bennett testified: "I was conductor on the train that injured appellee. We used caboose No. 02. It had been to the shop about thirty days before that time, but the coupler had not been changed at all. It was just like it came from the factory, it was made that way— and the other caboose of defendant was made the same way."

There was no evidence that appellee complained to appellant of the defect in the "coupling lever" or that any promise to repair was made, and the rule, that a servant who, without protest, continues in the employment of the master after he has learned, or in the exercise of ordinary care should have learned, of a defect in the machinery or appliances furnished for his use, assumes the risk resulting from such defect, is thoroughly well settled. In the case of Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 159, the appellee was thrown from a hand

car while working as a section hand for the railway company. His complaint was that the hand car was too light and frail for the purpose for which it was furnished. He testified: "I have been railroading seven or eight years and during all that time have been accustomed to use and handle handcars . . . I had never heard of any accidents from this car, and no one called my attention to the fact that the car was too light and I was not competent to judge for myself. I could see no cause for the accident unless the car was too light. I never knew it was too light before the accident occurred." The Supreme Court said: "The cars were of simple construction. Their material was not concealed but apparent. The witness Cullen, a laborer called by plaintiff and who was with him when hurt, says: 'As soon as we saw these new cars we knew they were too light.' The plaintiff testified that he did not know of the danger from using the cars. He is shown to have been a railroadman of several years experience. He, as all others, must be charged with the knowledge of the ordinary laws of nature. . . . If the car was too light, the plaintiff had the means of knowing that fact and he can not complain that the ordinary laws of physics were not explained to him." In the case of Seery v. Gulf, C. & S. F. Ry., 77 S. W. Rep., 950, this court had under consideration the question of the company's liability to a section hand who was injured in an effort to place a handcar on the track, which car the appellant claimed to be too heavy. A verdict had been instructed in the trial court for the company, and in affirming the judgment entered thereon, this court, among other things, said: "He (appellant) was thoroughly acquainted with the nature and character of the work in which he was engaged. The size and construction of the push car with which he was at work was open to his observation. The material of which it was constructed was apparent and no part thereof concealed. If the car was too heavy to be safely handled by appellant and the men assisting him . . . still that fact was known to him before he was hurt, or by the exercise of ordinary care in the discharge of his duties he must necessarily have known it." Again, it is well established law that "when the servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon himself if he goes on with it." (Texas & Pac. Ry. Co. v. French, 86 Texas, 96.) In Bonnet v. Galveston, H. & S. A. Ry., 89 Texas, 76, Judge Gaines said: "If the master and servant stand upon an equal footing with respect to the knowledge of the danger, then in case of an accident as a result of the danger, the master is exonerated. The servant owes no duty of inspection. He assumes the risk of a danger of which he has actual knowledge and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would use in the particular employment." The language of the court in Houston & T. C. Ry. Co. v. Martin, 21 Texas Civ. App., 209, is also pertinent here. In that case the court said: "Every fact and condition existing and affecting the risk were as open to appellee's observation as to that of the foreman. . . . The risk incurred seems clearly to have been one of those known to appellee to be incident to this particular service, and was therefore assumed by him; but if not, it was open and patent. . . . The facts affecting the risk were all known to him as well as to any one

else. He did not realize or foresee the danger, but it was one which, with his knowledge of the facts, he was required to foresee as well as any other. It arose from conditions open to his observation." See also, Quill v. Houston & T. C. Ry. Co., 93 Texas, 616; Missouri, K. & T. Ry. Co. v. Wood, 35 S. W. Rep., 879; Missouri, K. & T. Ry. v. Hanson, 90 S. W. Rep., 1122; Stewart v. Seaboard Air Line Ry. Co., 41 S. E. Rep. (Ga.), 982; Winkler v. St. Louis B. & B. Ry. Co., 38 S. W. Rep. (Mo. Sup.), 922.)

In the case at bar the appellee distinctly stated in open court upon the trial that "he relied upon the fact, that the coupling apparatus and rod were fastened too low down on the end of the end beam when it should be fastened on top of same and higher up than it was, as a ground for recovery." If, therefore, the coupling apparatus was defective in its construction or by reason of the manner in which, or place where, it was attached to the car, such defect evidently remained the same all the time appellee worked with it. According to his testimony he used this defectively constructed or arranged coupling lever frequently, perhaps, every day, except about thirty days, for a year in the same condition it was in when the accident and injury to him occurred, and knew it "got caught" in the manner which resulted in his injury, as alleged, about one-half of the time. He was an experienced railroad man and must have known, and the proof shows he did know, the defective condition of the lever causing his injury, if it was defective, as well or better than any other agent or employe of appellant. The caboose had been in the shop about thirty days prior to the time appellee was injured, but the uncontradicted evidence shows that the coupling lever in question had not been changed but that it was just like it was when it went into the shop and when it came from the factory. It further appears by appellee's own testimony and without dispute, that there was nothing to prevent him from seeing how the coupler was attached to the end beam, nor to prevent him seeing where the handhold, which caught his finger against the beam and cut it off, struck, and the indentation on the end sill or beam. In other words, it is placed beyond controversy by the evidence that the defect in the coupler or the improper or negligent manner in which it was attached to the caboose, as charged and relied on by appellee, was not only obvious and the danger of its use apparent, but that appellee had actual knowledge thereof by almost daily use and observation of the coupler for a year before he was injured. This being true, he assumed the risk incident to the operation of the coupler at the time he was injured, and can not recover therefor.

This conclusion renders it unnecessary to pass upon any other assignment of error. The case seems to have been fully developed. Indeed, there is absolutely nothing in the record that suggests the probability that any testimony can be procured upon another trial materially different from that shown by the record sent to this court. In such case it becomes the duty of this court to render such judgment as should have been rendered by the trial court. It is therefore ordered that the judgment of the court below be reversed and that judgment be here rendered for appellant.

*Reversed and rendered.*