## VERNON COTTON OIL CO. v. CATRON.

(Court of Civil Appeals of Texas. Texarkana. April 27, 1911.)

1. DEATH (§ 41*) — ACTION FOR NEGLIGENT DEATH—PARTIES.

An action for negligent death must be prosecuted in the name of all the beneficiaries, or in the name of one or more for the benefit of all.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 56, 57; Dec. Dig. § 41.*]

2. DEATH (§ 41*) — ACTION FOR NEGLIGENT DEATH—PARTIES.

An adult married daughter, abandoned by her husband and living with her young children with her father, must be made a party plaintiff in an action for the negligent death of the father, and a decision adjudging that she has no pecuniary benefit, rendered in an action in which she is not a party, is not binding on her, and does not excuse the failure to make her a party.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 56, 57; Dec. Dig. § 41.*]

3. MASTER AND SERVANT (§ 265*)—INJURY TO SERVANT—BURDEN OF PROOF.

One suing for the negligent death of a servant, suffocated by a pile of cotton seed falling on him, has the burden of bringing evidence justifying an inference of negligence of the master, proximately causing the injury, and the burden is not satisfied by simply showing a cause of death, which, while indicating a want of care somewhere, is as consistent with the hypothesis that it was produced by decedent's negligence as that it was produced by the negligence of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908; Dec. Dig. § 265.*]

4. MASTER AND SERVANT (§ 213*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A servant employed to shovel cotton seed from a seed pile into a conveyer assumes the risk of injury occasioned by the fall of the pile by gravity.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 559; Dec. Dig. § 213.*]

5. MASTER AND SERVANT (§ 196*)—FELLOW SERVANTS—WHO ARE.

A linter man in a cotton seed house required to give signals to servants employed to shovel cotton seed from a seed pile into a conveyer that the engine will stop is a fellow servant of such servants; the giving of the signal not being a part of the system of work adopted by the master nor intended to be used by him, nor relied on by such servants as a timely warning against the transitory danger of seed caving in on the floor, or to protect against the risk of handling the seed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 486–488; Dec. Dig. § 196.*]

Appeal from District Court, Wilbarger County; S. P. Huff, Judge.

Action by Mary E. Catron against the Vernon Cotton Oil Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

J. M. Catron was employed in the seed-house of appellant company, and was a member of the night shift, and his work was to shovel cotton seed into the conveyer from the seed pile in the room. The seedhouse is one room 300 feet long east and west, and between 60 and 70 feet wide north and south, and 27 feet in height. The conveyer that Catron fed, and which was operated for the purpose of carrying the seed into the mill, was situated on or near the floor, and ran back along the west end of the room. A large pile of cotton seed, constituting many tons, was stored in the room on the north side and on the west side for about 200 feet. The seed were piled in a pyramid 27 feet high at the top, and gradually sloping downward and towards a point about five feet from the edge of the conveyer. The room is provided with electric lights. The same engine which runs the machinery runs the dynamo, and, when the engine stops, the dynamo stops, and the lights in consequence are extinguished. It is the rule that, when the engine is to stop, the engineer must give a signal to the linter man, and it is the duty of the linter man to ring a bell as a warning to those in the seedhouse. The purpose of the signals is to raise the linters and stop feeding the conveyer during the shut-down. From the manner of piling the seed in the room, and in digging into the pile to feed the conveyer, there is likelihood of the loose seed caving in and falling down towards the feeder in large quantity. This danger is apparent to the feeder, and Catron was warned in his employment of the danger. When the lights are out, the feeder is not required to do any work of feeding, and it is not safe to work in the seed pile, as the feeder is not able to see the movement of the loose seed if they should begin to cave in towards him. In October, 1909, after midnight, a belt started to slip, and did slip, off, and the engine stopped and the lights went out. Before stopping the engineer signaled the linter man, but the linter man did not signal the seed room. The lights remained out about 15 minutes and the engine started again. A few minutes before the shut-down the witness Barry, who was a co-worker in the room with Catron, left the seed room to

go to the engine room to get a cup of coffee. At the time he left Catron was at work. About 10 minutes after the machinery started up, Barry left the engine room and went back to the seed room, and, when he got there, he found a conveyer which carried seed to the lint room choked, and began to unchoke it. This was not the conveyer that Catron fed. After unchoking the conveyer, Barry looked for Catron, and did not see him. Barry began feeding the conveyer, and while feeding it uncovered a hand in a pile of seed, and recognized it as that of Catron. He tried to pull him out, but could not, and then went for help. With the help the seed were removed, and the dead body of Catron was taken out. When uncovered, he was found lying toward the northeast and on his back, with his feet bent under him, his fork for feeding lying across his body with his right hand holding the handle and his left hand stretched out, his face turned upward and inclining backward. Catron was covered to a depth of about 2 feet of seed over his face and body, and about 16 inches over his hand. This was all that was known about his death. Claiming that it was negligence proximately causing the death of her husband to fail to give warning that the lights were about to be extinguished, the appellee sued for damages for his death. Appellant plead contributory negligence, assumed risk, and death due to accidental or natural cause. In a trial to a jury the verdict was in favor of appellee.

R. W. Hall and Capps, Cantey, Hanger & Short, for appellant. L. P. Bonner, Cook & Cook, and F. P. McGhee, for appellee.

LEVY, J. (after stating the facts as above). The petition did not disclose that the deceased had children living, but sought recovery solely for the benefit of the appellee, who was the wife. In fact, the appellee and the deceased had four living children. After verdict the appellant made a motion for new trial, alleging, among other things, that deceased left surviving him four living children, and that they were necessary and proper parties to the suit, that the petition did not prosecute the suit for their benefit, and that no final judgment could be rendered. The court first entered an order granting the new trial, then on motion of the appellee and hearing proof thereunder reconsidered the ruling and set aside the order, and then overruled the motion for new trial. The appellant assigns as error the refusal of the court to grant a new trial upon this ground of the motion. The motion of appellee referred to set up as a reason why the judgment should be finally entered for appellee and the new trial overruled that two of the children were married daughters, and the other two were adult sons, and that all of the children made their own living, and were not in any manner or to any extent dependent upon the deceased for support, and that deceased did not contribute to their support or maintenance. The proof made showed that the children were adults, and the daughters married. But one of the daughters, it appears, was not living with her husband, but in the house with her parents, and she and her parents were keeping house together.

[1, 2] It is the well-established rule in this state that the action should proceed in the name of all the beneficiaries, or in the name of one or more for the use and benefit also of the others interested. March v. Walker, 48 Tex. 376; Railway Co. v. Le Gierse, 51 Tex. 189; Railway Co. v. Spiker, 59 Tex. 435; Railway Co. v. Culberson, 68 Tex. 664, 5 S. W. 820; Railway Co. v. Wilson, 85 Tex. 516, 22 S. W. 578. From the mere fact that the children are adults, it does not necessarily follow that they were not necessary or proper parties to the suit. Railway Co. v. Cowser, 57 Tex. 293. Under the evidence heard on the motion, it might probably be assumed here for the moment that three of the children were not entitled to recover, and that the three cases cited by appellee would be controlling the question as to them. But, as to the daughter making her home with her parents, it could not be said, we think, that she did not sustain a pecuniary loss in the death of her father. In a trial she would be entitled to prove what aid or advantage having a pecuniary value she would have derived by the continuance of her father's life. She was in his house and under his care and protection, abandoned by her husband, with two young children; and the jury might consider that when sickness or misfortune should render his care or assistance necessary her father would render it, and be in a condition to render it, and that this would be of some pecuniary benefit. And there are other ways in which the jury might see by proper showing how the deceased could render pecuniary aid to this daughter. So, assuming a recovery, there existed a question of fact as to her right of participation that the daughter was entitled to have the jury pass on. And she could not be held concluded by any finding of the court on the motion here, the effect of which was to avoid making her a party to the action. See Cleveland & Sons v. Smith, 102 Tex. 490, 119 S. W. 843. A release signed by the parents, it has been ruled, constitutes no defense to a motion for new trial on the ground that the parents should have been parties to the action. Railway Co. v. Wilson, supra. Nor is it any answer that the mother's claim was barred by limitation. Railway Co. v. Spiker, supra.

As the judgment must be reversed for the error stated, it is unnecessary to discuss other assignments; but the failure to discuss the assignments relating to the sufficiency of the evidence to support the verdict should not be understood as approving the judgment in this respect.

The circumstances might be sufficient to warrant the inference that the deceased did not die from natural causes, but met his death from being caught under and suffocated by a pile of cotton seed caving in on him. The caving in of the pile was usual and was due indisputably to constantly changing its formation as a result of the work of deceased in feeding seed from the pile to the conveyer, and this usual condition and the danger therefrom deceased well knew, and was fully aware of. How he met his death is otherwise unexplained.

[3, 4] The burden of proof was upon the appellee to bring evidence sufficient to justify an inference of negligence upon the part of the appellant proximately causing the injury, and that burden is not satisfied by simply showing a cause of death which, while indicating a want of care somewhere, is as consistent with the hypothesis that it was produced by deceased's negligence or the laws of gravitation (and this latter risk was assumed by deceased), as that it was produced by the negligence of appellant. Railway Co. v. Endsley, 129 S. W. 342. And assuming that the linter man may properly be chargeable with negligence in failing to give the signal that the engine would be stopped, and that the failure to give the signal had such connection with the death as to be the proximate cause, such negligence would be, as we are inclined to say from the evidence in the present record, the act of a fellow servant, and would preclude a recovery by appellee.

[5] It would be the act of a fellow servant because the signal from the linter man to the seedhouse that the engine would stop was not a part of the system of work adopted and put in use by appellant, nor intended to be used by appellant, nor relied on by deceased as a precaution or timely warning against the transitory danger of seed caving in on the feeder, or to protect against the risk of handling the seed. Deceased was not a railway employé, and the common law of fellow servants would be applicable. Oil Co. v. Jonte, 36 Tex. Civ. App. 18, 80 S. W. 847. These are brief suggestions of reasons why if all the parties had been before the court we would not feel warranted in sustaining or approving the verdict in this case in favor of appellee.

The judgment of the district court was ordered reversed, and the cause remanded.