## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. TUNE.

(Court of Civil Appeals of Texas. Texarkana. May 29, 1913. Rehearing Denied June 12, 1913.)

1. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY—DEFECTIVE RAILROAD CAR.

In an action for injuries to a brakeman, evidence consisting of experiments and photographs *held* insufficient to show that it was physically impossible for the brakeman to be knocked from a dump car by the door swinging out and striking the arm by which he was holding to the grabiron, as he testified.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

2. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT — EVIDENCE — SUFFICIENCY — NEGLIGENCE OF MASTER.

In an action for injuries to a brakeman, caused by being knocked from a dump car when the door swung out and struck him, evidence *held* sufficient to show that the company knew or should have known that the door of the car was unfastened.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—SAFE PLACES FOR WORK—CUSTOM.

Where a brakeman was injured by the door of a dump car swinging out and knocking him from the car, the fact that there was no rule or custom requiring the fastening of the doors of such cars does not require the direction of a verdict for the defendant, since, notwithstanding such fact, the jury might find that the failure to fasten the door was negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 295*)—INJURIES TO SERVANT—INSTRUCTION—ASSUMING NEGLIGENCE OF MASTER.

In an action for injuries to a brakeman who was knocked from a dump car by a swing-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ing door, an instruction that it was the duty of the company to keep the car in a reasonably safe condition for use, and that plaintiff could assume that this had been done, but that if he saw that the door was open and swinging, and an ordinarily prudent man would not have mounted a car in that condition, he assumed the risk, is not misleading as instructing the jury that the car was not safe unless the door was fastened.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by James Tune against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Glass, Estes, King & Burford, of Texarkana, and E. B. Perkins and D. Upthegrove, both of Dallas, for appellant. Graham & Smitha, of Texarkana, for appellee.

WILLSON, C. J. A report of the action of this court on the first appeal of this case will be found in 147 S. W. 364, 365. The judgment for $2,500 in favor of appellee, from which relief was then sought, was reversed because of an error in the charge of the trial court to the jury. The testimony on the trial resulting in the judgment for $3,500 in favor of appellee, from which this appeal is prosecuted, does not appear to have been materially different from that heard on the first trial. In an amended petition filed in the court below, after the case had been remanded for a new trial, appellee alleged as negligence on the part of appellant, which entitles him to the recovery he sought, its failure to fasten or securely fasten the door of the dump car, which he alleged swung out and, striking his arm, caused him to fall from the car.

It appeared from the testimony that appellant's local freight train was due to leave Ft. Worth for Commerce every morning at 5 o'clock. The witness Ivey was the conductor, the witness Mason the engineer, and appellee and the witness Rotemberry the brakemen, for the train. It was the duty of other employés of appellant, before the time the train was due to leave arrived, to assemble the cars appellant desired to go out as a part of the train on track No. 3 in its yards. In assembling the cars on this track it seems they were left thereon coupled in groups. All the crew of the local had to do before leaving was to couple an engine to the cars on track No. 3, couple together the groups of cars left on that track, and then move same to another track and couple to a caboose. On the morning appellee was injured the crew began before daylight, the usual time, to make up the train to be carried out. The groups of cars on track No. 3 had been coupled together and were being slowly moved off of said track when appel-

lee, in the discharge of his duty, in an attempt to ride one of the cars, of the kind known as "dump cars," loaded with crossties, fell and suffered the injury he complained of. The dump car was uncovered, like a coal car, and, it seems, was like an ordinary flat car, except that its sides were provided with framework intended to prevent dirt, gravel, etc., with which it might be loaded, from falling therefrom. This framework consisted of upright posts 4x4 or 4x6 inches, supporting long pieces of timber, running with the car lengthwise, from which were suspended by hinges five doors on each side of the car. The doors were made of heavy boards 5 or 6 feet long. The car was equipped with appliances operated by levers for fastening the doors at their bottoms. On the post situated at the southeast end of the car (as it was then moving) was an iron handhold 24 or 30 inches long, extending up and down the post. Appellee claimed that while he was holding to said handhold with his left hand and was resting his right foot on an iron stirrup attached to the bottom of the car and extending below it 12 or 14 inches, and his left foot on the arch bar or oil box under the car, the door thereof nearest its said southeast end swung out and, striking him on the under side of the wrist of his left arm, caused him to fall from the car. His account of the accident and circumstances surrounding it was as follows:

"After I had coupled up all the cars and signaled to the engineer to go forward and stood back to see that all the cars on No. 3 were coming, I then caught onto this dump car. I caught onto it in the usual way, while it was in motion. I had my lantern in my right hand. The train was going towards Commerce. I was on the right-hand side, the engineer's side. It was necessary for me to be on that side in order to signal the engineer. As the train was passing me I grabbed onto the handhold on one of the corner posts on the front end of the car. When a car is in motion and you are on the right-hand side you always find the handhold on the front end. When I caught onto this car this door swung out and hit my arm and knocked my hold loose. It struck my left arm about two or three inches below the wrist, and caused me to turn loose my hold. I then fell and in scrambling around I dropped my lamp and caught my hand under the wheel—my left hand. I lost the forefinger close to the last joint, the middle one at the last joint, the next one between the first and second joints, and the little finger just behind the nail. * * * It was just a short time, just a moment, after I got on the car before the door flew open and knocked my hold loose. I could not hardly say how far we had gone, just a short distance. Just giving a rough estimate I would say the train was running at that time between three and five miles an hour. It was just

pulling out. * * * This car door flew out and struck me on the arm and knocked my hold loose, and that is what caused me to fall. I was holding on with my left hand. I was faced towards the engineer. * * * When a man reaches up and catches hold of the iron bar his body will swing around the opposite way the train is going. You sometimes go backwards and forwards several times before you get a good hold. The motion of the train will jerk you around to the side. * * * It is my recollection now that I had one foot on the arch bar and one foot in the stirrup. * * * I did not notice exactly where or how I put my foot, and I am not able to tell the jury exactly where my foot was. I got on in the usual way and was hanging on in the usual way. It could not have been more than three or four seconds from the time that I got on the car until the accident occurred, just a moment. * * * Sometimes you put your foot on the arch bar and sometimes on the oil box. The arch bar goes over the framing of the wheel and the wheel is on the inside of it. The oil box comes out further than the arch bar. The arch bar is something like 18 or 20 inches under the car; I could not say exactly. * * * The arch bar and stirrup are further back on the car than the grabiron. If this car was going east, the grabiron would be on the end post; the stirrup would be something near straight with the grabiron. * * * The dump doors fitted in right close to the corner posts. * * * The grabiron stood out from the corner post three or four inches. * * * The car was moving slow when I mounted it. Whether I got up on it and got in a position so that I had all the hold that I intended to get is something I can't explain exactly. * * * The car moved about a car and a half length, and I was looking towards the engineer, and all at once the door came out and hit me on the wrist, on the inside part of the arm about 2½ or 3 inches above the wrist. That is the way I say now that it happened. I said that I got up there and was in that position and had my left hand about four or five inches, I supposed, above my head, holding onto that grabiron. I swore before that I was in that position and stayed there until the car ran about a car and a half length. I say the same thing now. * * * My face was towards the engineer, watching for the switch frog about 150 or 200 yards away. * * * When one of those doors is loose and is swinging loose it extends out with the motion of the train; it goes backwards and forwards. * * * When those dump doors are hanging loose the motion of the train jostles them in and out. Low joints on the track have a great deal of effect on the motion of the car. One down here on this side and one here on the other keeps the car in a rock, one side down and the other up. There are usually low joints and high centers found in the yards. * * * I don't know whether any part of the door hit me anywhere else or not. On the arm was the only place I saw any skin knocked off or bruise. I had on my coat and gloves."

[1] In face of testimony of appellee set out above, appellant insists that "the evidence," quoting from its brief, "without dispute showed that by actual demonstration the plaintiff could not have received the injury as he claimed, for the physical construction of the car was such that the injury could not have occurred as he claimed," and that therefore the trial court erred in refusing its request that the jury be instructed to find in its favor. The contention is based, it seems, mainly on testimony of the witnesses Pritchard and Hunter to the effect that tests made in their presence, "shortly after" the accident occurred, showed that the door of the car, when the car was moving as appellee testified it was moving at the time he was injured, would not swing out far enough to strike the arm of a person holding to the handhold as appellee claimed he was, and on the testimony of the witnesses Hart and Ruff to the effect that they believed from experiments they had made with the car while it was standing still that the door, if it swung out as appellee testified it did, must have struck the trunk of appellee's body instead of his arm. As we view the testimony of those witnesses, even if it appeared that the tests were made under conditions similar to those existing at the time appellee was hurt, we would be of the opinion that it lacked much of proving that it was not possible for appellee to have been struck on the arm by the door and so knocked from the car, as he testified he was. But it appeared that the tests were made under materially different conditions, and we think they therefore were of little value as proof that it was impossible for the accident to have happened as appellee swore it did. Nor has an examination of the photographs of the car, made a part of the record, in connection with the testimony of witnesses as to the construction of the car, convinced us that the accident could not have happened as appellee testified it did happen.

[2] As another reason why the jury should have been so peremptorily instructed, appellant insists that if the door was unfastened "there was," quoting further from its brief, "no evidence showing or tending to show how long it had been unfastened, or that defendant could have discovered its condition by the use of ordinary care." But we think there was testimony from which the jury might have inferred that the door was unfastened when the car was placed on track No. 3 to be taken out in the train, and that appellant knew or should have known it was unfastened. It was shown that the car reached appellant's yards two or three days before the accident occurred, and that all its doors were then properly closed and fastened. It was shown that during the two or three days the car was

in the yards before it was set on said track No. 3 it "was," using the language of a witness, "switched around the yard considerably." It was shown that doors of such cars could become unfastened as the result of a switching thereof in the yards. It was not shown that the car was switched around or moved in any way after it was placed on track No. 3 to be taken out in the train. It was shown that directly after the accident occurred the middle door on the side of the car appellee was on when he fell was found to be unfastened. It seems to us the jury might have inferred from the facts recited that the doors had become unfastened as the result of switching the car was subjected to in the yard before it was placed on track No. 3, and that appellant, if it did not know they were unfastened at the time it placed the car on said track No. 3 for the purpose of having it carried out in the train, in the discharge of its duty to use ordinary care to furnish appellee a reasonably safe place in which to work and reasonably safe instrumentalities with which to work, should have known it. We do not think the jury would not have been warranted in so finding because of the testimony of the witnesses Ivey, Mason, and White that they examined the car directly after appellee was injured and found all the doors thereof fastened, except said middle one, for there was testimony warranting an inference by the jury that the door appellee claimed struck him was fastened by some one between the time it struck him and the time said witnesses inspected the car. The case on its facts, we think, is not like Railway Co. v. Anderson, 118 S. W. 1113, Railway Co. v. Jones, 103 Tex. 187, 125 S. W. 309, Railway Co. v. Endsley, 103 Tex. 434, 129 S. W. 342, and others cited by appellant.

[3] Further urging its contention that the action of the trial court in the particular referred to was erroneous, appellant asserts that it appeared without dispute that cars like the one in question "were moved and hauled about without the doors being fastened," and that it did not appear that "there was any rule or custom to fasten said doors." As we understand the record, it does not support the assertion made; but, if it did, we think a question nevertheless would have been presented for the jury to determine, to wit, whether under the circumstances of the case appellant, if it failed to fasten the door before placing the car on track No. 3 to be taken out in the train, discharged the duty it owed appellee to use ordinary care to see that the car was in a reasonably safe condition for the use he was expected to make of it or not. If appellant in the exercise of such care should have seen to it that the door was fastened, neither the fact that there was no custom requiring it to be fastened

nor the fact that such cars were moved about with the doors unfastened would have furnished a reason why it should escape a liability the law visits on one guilty of such negligence.

Our conclusion is that the court did not err in refusing to instruct the jury to return a verdict in appellant's favor. On the contrary, we think the testimony was sufficient to support the finding of the jury that appellee without fault on his part, as the proximate result of negligence on the part of appellant, was injured as alleged by him, and we so find.

[4] By its second and fourth assignments appellant attacks as erroneous the seventh paragraph of the court's charge, which was as follows:

"It was the duty of the defendant to use ordinary care to put and keep the ballast or gravel car in a reasonably safe condition for use, and plaintiff had the right to assume that defendant had performed this duty and that said car was in such reasonably safe condition for use. However, if you believe from the evidence that the door of said car was open and swinging when plaintiff mounted it and that he saw its condition before he mounted it, or would have seen it by the exercise of that ordinary circumspection that an ordinarily prudent man would have used in the particular employment, and that a person of ordinary care and prudence would not have mounted said car under the circumstances of the situation, then he assumed the risk and can't recover, and you will find for the defendant. However, if you believe that in mounting said car the plaintiff did that which a person of ordinary care and prudence would have done under the circumstances of the situation, then he did not assume the risk, and his right to recover would not be defeated."

It is claimed that the effect of the instruction was to tell the jury that the car was not reasonably safe for the use appellee was expected to make of it, unless the doors thereof were closed and fastened. Had the jury considered said portion of the charge without reference to other portions thereof, we do not think they would have understood that to be its effect; and we are sure, if they considered it with reference to the other portions of the charge, they could not have been misled to believe such was its effect.

Objections made on the first appeal to certain instructions the court had given to the jury are renewed on this appeal to instructions identically the same given at the last trial. We were of the opinion, with reference to the record on the former appeal, that the objections were not tenable. Having again considered them, with reference to the record now before us, we are of the same opinion.

The judgment is affirmed.