HOUSTON E. & W. T. RY. CO. v. HICK-
MAN. (No. 7628.)

(Court of Civil Appeals of Texas. Galveston.
Dec. 18, 1918. Rehearing Denied
Jan. 9, 1919.)

1. MASTER AND SERVANT ⊕⃝125(8) — NEGLI-
GENCE—DEFECTS—PRESUMPTION.

Without proof of master's actual knowledge
of the existence of a defect in appliances, etc.,
such defect must have existed for such length
of time as to raise the presumption of negli-
gence in failing to discover it by reasonable in-
spection.

2. MASTER AND SERVANT ⊕⃝278(7)—DEFECTS
IN EQUIPMENT—NEGLIGENCE—SUFFICIENCY
OF EVIDENCE.

In employé's suit against railroad for injury
in operating lever controlling interlocking plant
at junction of tracks, evidence *held* to sustain
jury's finding that failure of lever to work was
due to railroad's negligence in constructing plant
defectively, and in thereafter maintaining it in
its defective condition.

3. MASTER AND SERVANT ⊕⃝276(6)—NEGLI-
GENCE—PROXIMATE CAUSE—EVIDENCE.

In employé's suit against railroad for in-
jury in operating lever controlling interlocking
plant at junction of tracks, evidence *held* suffi-
cient to sustain jury's finding that failure of the
lever to work was proximate cause of injury.

Error from District Court, Harris County;
Henry J. Dannebaum, Judge.

Suit by L. J. Hickman against the Hous-
ton East & West Texas Railway Company.
Verdict and judgment for plaintiff, and de-
fendant brings error. Affirmed.

Baker, Botts, Parker & Garwood and Mc-
Means, Garrison & Pollard, all of Houston,
for plaintiff in error.

Sam, Bradley & Fogle and Fred R. Swit-
zer, all of Houston, for defendant in error.

LANE, J. L. J. Hickman brought this suit
against the Houston East & West Texas Rail-
way Company, claiming that he had been in-
jured in operating a certain lever controlling
an interlocking plant at the junction of
the track of the defendant company with the
tracks of the Houston Belt & Terminal Rail-
way Company and the Trinity & Brazos Val-
ley Railway Company, while in the employ-
ment of the defendant company, and that he
had also, by reason of such injuries, incurred
certain medical and other expenses. Plain-
tiff alleged, among other things:

"That the defendant was on and about the
20th day of October, 1912, engaged in the busi-
ness of operating trains and cars over a railway
track maintained and owned by it in the city of
Houston, in Harris county, Texas; that on or
about the said date the defendant was the own-
er of said railway track, engines, and cars, and
carried on the business of common carrier be-

tween the city of Houston, Texas, and other
points within the state of Texas; that in con-
nection with and incident to the above-mention-
ed business of operating the said railway the
defendant owned, operated, maintained, and con-
trolled a system of switches, derails, lights, and
other machinery, tools, and apparatus, known
as and called an interlocking plant, located in
the city of Houston, Texas, near the crossing
of defendant's railway track with the track of
the Houston Belt & Terminal Railway Com-
pany and the Trinity & Brazos Valley Railroad
Company, in the city of Houston, Texas.

"That the said switches, derails, and lights
and signals were on the said date operated and
manipulated by a system of wires, lever, and
rods and machinery, which said wires and rods
ran along the railway track of the defendant
company; the said wires being connected at one
end with a mechanical device, and at the other
end connected with a lever stationed in the tow-
er, so that what is known as the 'long-distance
signal' could be operated so as to show a stop
signal, or a clearance, according as the lever was
thrown in the tower.

"That one system of the said rods running
along the said track was connected at one end
with what is known as the 'home signal,' and
at the other end was connected with a lever
stationed in the said tower, so that the signal
could be thrown at a clearance or stop, accord-
ing as the lever was thrown.

"That one system of the said rods running
along the defendant's railway track was at one
end connected with certain machinery, and at
the other with a lever in the tower, so that by
throwing the lever in the tower to a certain po-
sition the machinery was set in motion, which
would cause the derail (an opening in the defend-
ant's railway track) to open or close according
as the lever in the tower was operated; that on
or about the said date there was stationed on
the long-distance signal and home signal lights,
and by the operation of the levers in the tower
these lights would have reflected a stop or
clearance signal, according as the signal was
worked, provided the interlocking plant had
been constructed and maintained in the proper
manner; the object of the entire system being
that the operator in the tower could, by the op-
eration of the lever, raise or lower the long-
distance signal and home signal, and open or
close the opening in the defendant's track (called
the derail).

"That on or about said 20th of October, 1912,
plaintiff was employed by the defendant as a
towerman, in the above-mentioned tower; his
duties under his employment being that he
should be stationed in the said tower, operate
the levers, and by means thereof raise or lower
the above-mentioned signals, and open or close
the, said derail when necessary so to do, to let
the defendant's engines, cars, and trains proceed
over the crossing of the other two mentioned
railroad tracks, and proceed over the derail or
opening in the defendant's track. * * *

"That said derailing device was defective in
that the wire leading to the long distance signal
was not properly supported and was not main-
tained in the proper position with reference to
the other parts of the machinery so that said
wire was in danger of becoming and did become
entangled in the other parts of the machinery

controlling and controlled by the derailing device, so that, in order to close said derail, it became. necessary to cut, mash, or break said wire before said derail could be closed and said train permitted to pass along and over the track at the point of said derail in safety. Defendant was further negligent in the construction of said plant, in that the rod or bar which protruded beyond this point along which the wire leading to the distance signal passed at said derailing device was too short, so that said wire could pass over the end thereof and thus become entangled in the slot or notch in said rod or bar, and prevent or hinder the closing of said derail, and rendering it necessary to cut, break, or mash said wire in two in order that said derail might be closed.

"That the defendant company failed to use ordinary care in providing the plaintiff with reasonably safe and suitable appliances, and failed to use ordinary care to see that the same were kept in a reasonably safe and suitable condition, in that the defendant company negligently constructed and maintained said interlocking plant in a defective manner and condition, by reason of which said plant failed to operate, as particularly set out in the foregoing paragraph; that the defect in the construction and maintenance of said plant, as plaintiff believes, was as follows: That one of the iron rods which was connected with said derailing device had a notch in it in such manner and place that the wire controlling the distance signal and running along said track of defendant was liable to drop into said notch in such manner as to prevent or seriously interfere with the closing of said derail, and that the wire running along defendant's railway track, and connected with the above-mentioned distance signal, was so constructed and maintained that there was danger of its being misplaced and drop into said notch, and thus prevent the closing of said derail by the operation of said levers; that upon the occasion of plaintiff's said injuries said wire connected with said distance signal did become misplaced, and dropped into said notch in the rod controlling and operating said derail, by reason of which said machinery and rod connected with and controlling said derail would not move in a proper position for the derail to close.

"That the said injuries and damages suffered by the plaintiff were and are the direct and proximate result of the carelessness and negligence of the defendant, its agents and employés, as above set out in detail, and that the said negligence and carelessness is and was the direct and proximate cause of the said injuries received by the plaintiff, and the damages suffered and to be suffered by the plaintiff on account thereof."

Plaintiff's prayer was for the recovery of $50,000.

Defendant answered by general denial, specially alleging contributory negligence on the part of plaintiff.

The case was submitted to a jury upon special issues, in answer to which they found:

(1) That the lever in the interlocking plant failed to work, as alleged by plaintiff, at or about the time in question.

(2) That such failure was due to the distance signal wire catching in the notch of the derail bar.

(3) That the failure of the lever to work was due to the negligence of the defendant in constructing or maintaining the interlocking plant.

(4) That the plaintiff received an injury on the occasion in question substantially as alleged by him.

(5) That the failure of the lever to work was the proximate cause of plaintiff's injury.

(6) That the plaintiff was guilty of contributory negligence in failing to signal the train to stop, when he discovered that the derail could not be operated by the ordinary use of the lever.

(7) That plaintiff was guilty of contributory negligence in attempting to pull the lever in the manner claimed by him, believing that either the wire or some other foreign substance had caught in the notch of the derail bar.

In answer to special issue No. 7 the jury found the amount of damages sustained by plaintiff to be $1,500, and by answer to special issue No. 8 found that such damages should be diminished, by reason of plaintiff's contributory negligence, in the sum of $500.

Upon said verdict judgment was entered for plaintiff for $1,000, interest, and costs, from which the railway company has appealed.

The only assignment of appellant is in effect that the verdict of the jury is not sustained by the evidence, and is against the great weight and preponderance of the evidence, and that the court erred in refusing to instruct a verdict for defendant, as requested by its special charges 1, 2, and 3.

Appellant's main contention, if not the only one, is that, if it be conceded that there was a defect in the interlocking plant which allowed the distance signal wire to catch in the notch or slot of the derail bar, and that it did so catch and result in the injury to appellee, it does not follow that the defendant was guilty of actionable negligence, unless it be shown that appellant had either actual or constructive knowledge of such defect, and that the appellant was negligent in not knowing of it, or that there were facts or circumstances in evidence raising the presumption of negligence upon the part of appellant in failing to discover the defect and make repairs between the time the plant became defective and the time plaintiff was injured.

[1] As stated by appellant in its brief, to make its contention clearer, it says: That in the absence of proof of actual knowledge upon the part of appellant of the existence of the defect, such defect must have existed for such length of time as to raise the presumption of negligence upon the part of defendant in failing to discover it by a reasonable inspection. In support of this contention it cites Thompson's Law of Negligence, vol. 4, § 3864; Railway v. Endsley, 103 Tex.

435, 129 S. W. 342; Railway v. Kowsikowsiki, 103 Tex. 173, 125 S. W. 3; Street on Personal Injuries, § 132, p. 227; Manson v. Eddy, 3 Tex. Civ. App. 148, 22 S. W. 66; Gamer v. Gammage, 162 S. W. 980; Railway v. Jones, 103 Tex. 187, 125 S. W. 309, and other cases. We think the cases cited sustain the contention, and we know of no cases holding to the contrary.

[2, 3] This contention, we think, is conceded by counsel for appellee, but this concession does not relieve appellant from liability to appellee for injuries suffered by him, since he pleaded and we think showed by the evidence that the interlocking plant was negligently constructed, and as so constructed by appellant was negligently maintained ever since, and that by reason of such defective construction and maintenance appellee was injured. The undisputed evidence shows that there was a notch or slot in the derail bar into which the wire connecting the lever in the tower with the distance signal had at times fallen, and that when it did so the lever in the tower could not be operated without great force, if at all. It was also shown that a like device, constructed in the same manner as the one in question, on the opposite side of the tower, had the same structural defect as the one under consideration, and that the wire in that device had frequently dropped into the notch or slot in the derail bar, and that the wire had to be removed before the lever in the tower could be operated.

That the lever in the interlocking plant under consideration failed to work at the time of the alleged injury of appellee, and that such failure was due to the distance signal wire catching in the notch of the derail bar, are undisputed facts, and we think the evidence amply sufficient to support the finding of the jury that the failure of the lever to work was due to the negligence of appellant in constructing said plant defectively and in maintaining the same in its defective condition, and that the failure of the lever to work was the proximate cause of plaintiff's injury.

It is apparent from what has been said that we think the evidence is sufficient to support the verdict of the jury and the judgment rendered. The judgment of the trial court is therefore affirmed.

Affirmed.