GAMMAGE v. GAMER CO.   (No. 25-2649.)

(Commission of Appeals of Texas, Section A. Feb. 19, 1919.)

1. MASTER AND SERVANT ☞297(4)—INJURY TO SERVANT—VERDICT—CONCLUSIVENESS.

Where the court submitted the issues, including that of defect in machinery, in a general charge so framed that, unless the jury found the machine defective, its verdict would be for the defendant, verdict for plaintiff necessitated the conclusion that they found the machine defective.

2. MASTER AND SERVANT ☞265(5)—UNSAFE MACHINERY—RES IPSA LOQUITUR.

Where a servant was injured by the starting of machinery unexpectedly and automatically without human agency, the character of the accident and circumstances *held* to show defendant negligent in caring for the machine.

3. MASTER AND SERVANT ☞124(1)—INJURY TO SERVANT—SAFE PLACE TO WORK—INSPECTIONS.

It is the duty of the master to make such inspections of machinery, and use such precautions in keeping it oiled and in good running condition, as its nature requires.

4. MASTER AND SERVANT ☞286(24)—INJURY TO SERVANT—DEFECT IN MACHINERY—TIME FOR DISCOVERY.

Where the evidence raises the question as to whether a machine was ever inspected or more than casually observed by the master, whether the defect existed for a time sufficient to be discovered upon proper inspection does not arise, and whether the defendant was free from negligence is a question for the jury.

5. MASTER AND SERVANT ☞278(5, 16)—INJURY TO SERVANT—STARTING OF MACHINE—NEGLIGENCE—INSPECTION—EVIDENCE.

Evidence in a servant's action for injury from the unexpected automatic starting of a machine *held* sufficient to show the master's negligent failure to inspect, oil, and repair the machine.

6. APPEAL AND ERROR ☞1114—DISPOSITION OF CASE—DECISION OF INTERMEDIATE COURT —REMAND.

Where the Court of Civil Appeals reversed and rendered the judgment of the trial court, and made no finding of fact which would defeat recovery, the Supreme Court may reverse such judgment and affirm that of the trial court.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Henry C. Gammage against the Gamer Company. Judgment for the plaintiff was reversed by the Court of Civil Appeals and judgment rendered for defendant (162 S. W. 980), and plaintiff brings error. Judgment of the Court of Appeals reversed, and that of the trial court affirmed.

Hunter & Hunter, A. J. Clendenen, and Theodore Mack, all of Ft. Worth, for plaintiff in error.

Lassiter, Harrison & Rowland, of Ft. Worth, for defendant in error.

TAYLOR, J. The plaintiff, Henry C. Gammage, sued the defendant, the Gamer Company, for damages on account of personal injuries received by him while operating a machine for cutting leather washers. It is not necessary to describe the machine and the manner of its operation further than as follows:

Immediately in front of where the operator stands there is a perpendicular iron shaft which, when the machine is in motion, works up and down like a sewing machine needle. In the lower end of the shaft is a detachable cutter, fastened in by means of a small pin or key. The leather, from which the washers are cut, is placed under the cutter on a horizontal die having a circular hole in it directly under the cutter, measuring the same in circumference as the cutter. The downward stroke of the shaft presses the cutter through the leather and on through the hole in the die, thus cutting the washers. There are two ways of starting the machine, and only two, when it is properly constructed and in good condition: First, by shifting a bolt from a loose pulley to a tight pulley; second, by moving a balance wheel. The loose and tight pulleys are close together on the same shaft, and the belt is shifted from one to the other by the operator in starting and stopping the machine, by means of wooden lever just behind the operator and within his reach. The balance wheel is located a few feet from where the operator stands, about two feet above and in front of him.

The plaintiff at the time he entered the employ of the defendant was inexperienced as a machinist. It was known to the defendant that he had not operated, or worked around, machinery of any kind prior to that time. When injured he had been working for the defendant nine days, and had operated the machine about seven days. On the occasion of the plaintiff's injury, and immediately before the accident causing it happened, the machine was standing idle. The die was in position for cutting washers, and the lower end of the shaft was at rest a few inches above the die. The plaintiff had just inserted the cutter into the end of the shaft, holding it in position with his left hand, and was in the act of fastening the cutter in with the key, when the machine suddenly started, amputating three of the fingers of his left hand.

The allegations of the petition material here are substantially that the plaintiff was an inexperienced workman with machinery, as was known to the defendant; that the ma-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

chine upon which the plaintiff was injured was, through the negligence of the defendant, out of repair, defective, and dangerous to work with; that the lever used for shifting the belt was out of repair and not properly secured so as to hold the belt on the loose pulley; that the loose pulley was worn and wobbled, and was not properly set on the shaft, and would wobble and otherwise carry the belt onto the fixed pulley, or by friction and negligent failure to oil would become heated and tighten on the shafting, thereby starting the machine; that the plaintiff had no knowledge of such defects, and they were not obvious and open to view; that the defendant knew of the existence of the defects and had notice thereof, or by the exercise of reasonable diligence could have known thereof; that by reason of such defects and dangers, and the failure of the defendant to warn the plaintiff, he was injured as alleged.

The answer consisted of a general denial, plea of contributory negligence, and assumed risk.

The trial was before a jury, and resulted in a verdict for the plaintiff for $4,000. The Court of Civil Appeals reversed and rendered the judgment in favor of the defendant. 162 S. W. 980.

[1] There is no evidence that the machine was set in motion on the occasion of the accident by any human agency. It had never been known to start automatically prior to that time, and it is uncontroverted that the machine, when properly constructed and in good condition, could be started in only the two ways stated above. The only reasonable conclusion to be deduced from the testimony is that the machine, at the time the plaintiff was injured by it, was defective. The court submitted the issues, including the issue of the defect, in a general charge, so framed that, unless the jury found the machine was defective, its verdict would be for the defendant. The verdict was for the plaintiff, and necessitates the conclusion that the machine, at the time of the plaintiff's injury, was defective. The Court of Civil Appeals does not question the sufficiency of the evidence to warrant this conclusion. Its action in reversing and rendering the judgment is based upon the proposition that, while the evidence may be sufficient to establish the fact that the machine was defective, there is no evidence tending to show that the defect was due to the defendant's negligence. Judge Hendricks in the opinion on rehearing says:

"We decided this case upon what we conceived to be a universal and simple rule of law; that is, 'There must be evidence fairly tending to show either that the defendant knew of the existence of the defect, or that, in the exercise of reasonable and ordinary care and diligence, the defect could have been discovered before the accident.'"

[2] The principle of law stated by the honorable Court of Civil Appeals is correct, but, under the facts of this case, both the question of the existence of the defect, and of the diligence and care used by the defendant to discover or prevent it, are material, and the evidence bearing on both issues must be considered as a whole in determining whether the defendant was negligent. The issues cannot be disassociated in their relation to the defendant's negligence. The fact that the machine started automatically is not relied on solely, and of itself, as showing that the defendant was negligent. The case is not one either requiring or permitting the application of the doctrine of res ipsa loquitur, which is evident from the character of both the pleadings and evidence. The plaintiff, in addition to pleading the facts tending to show that the machine started automatically, pleaded that through the negligence of the defendant there were three defects that caused it to start, pointing them out with particularity. He pleaded also that the defendant knew, or by the exercise of ordinary care could have known, of the existence of such defects. He introduced the testimony of W. S. Kirby, pointing out the three possible defects in detail, any one of which could have caused the machine to start, and the existence, discovery, and prevention of all of which depended upon the degree of care used by the defendant in inspecting, repairing, and oiling the machine. While the doctrine of res ipsa loquitur is not applicable here, the facts of the case are such as to invoke the rule easily confused with that doctrine, and announced in the case of Washington v. M., K. & T. Ry. Co., 90 Tex. 315, 38 S. W. 765, as follows:

"While the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident, and the circumstances in proof attending it, may be such as to lead reasonably to the belief that without negligence it would not have occurred."

The principle underlying the liability of the defendant in such cases, and referred to in the Washington Case, supra, is frequently stated as follows:

"Where the particular thing causing the injury has been shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care."

[3, 4] It was the defendant's duty to use ordinary care to furnish the plaintiff with safe machinery with which to do his work, and to use the same degree of care to keep it in a reasonably safe condition. In discharging this duty it was incumbent on the defendant to make such inspections of the

machine, and use such precautions in the matter of keeping it oiled and in good running condition, as the nature of the machine indicated to be proper. It is true that negligence is not imputed to the defendant if the defect is not discoverable by a reasonably careful inspection. It is equally true, however, "that the master's nonliability cannot be affirmed as a matter of law, merely because the abnormal condition which created the risk from which the servant suffered injury was not apparent to a person making a superficial examination of the instrumentality in question. Where the evidence, as in this case, raises the question as to whether the machine was ever inspected, or more than casually observed from time to time by the defendant, the question of whether the defect had existed for a sufficient length of time to be discovered upon a proper inspection does not arise, and in such cases it is a question for the jury as to whether the defendant is free from negligence. Labatt's Master & Servant, vol. 13, §§ 1056–1059.

[5] The machine was owned by the defendant, and was under its exclusive management. Mr. Gamer was the president, manager, and principal owner of the company, and a Mr. Bird was superintendent. Mr. Wainwright, an employé at the time plaintiff began working for the defendant, instructed the plaintiff as to how to "set up" and operate the machine. Neither he nor the superintendent testified. The plaintiff's task of operating the machine seemed to be temporary, as the superintendent had stated to him a few days before he was injured that he had another position which he would probably give him in two or three days as receiving clerk. He had no duties in connection with the machine other than those immediately incident to operating it. The following testimony of the plaintiff touching his duties is not controverted:

"I could not say whether the Gamer Company had a man regularly employed to oil its machinery. * * * I could not say about that. My attention was not called to any part or any defect in that machinery. I was never directed by any one connected with the Gamer Company to make any inspection of the machinery at any time; there was nothing ever said to me about inspecting the machinery. Nothing was ever said to me by any one about being careful in the use and operation of that machinery."

There is no testimony that Mr. Gamer, the manager, or any one else, made an inspection of the machine at any time for the purpose of ascertaining its condition. Mr. Gamer's testimony, and the only testimony, in fact, bearing on this question, is as follows:

"As to whether or not the shaft, pulley, machine, etc., were oiled from day to day, I state that we had a man to make a practice to oil every day; it was his job to do oiling every morning. From my observation of the machine from day to day, I can state that it was kept in first-class condition with reference to the oil prior to the accident—it was."

The witness, on being recalled by the plaintiff, testified:

"I said that I had a man regularly employed to oil up this machine; * * * had him regularly when he was there. It was his duty to keep the machine oiled. We had a man named Mike; I do not know what his other name was. * * * He was an Irishman, and I do not know what his other name was."

The foregoing statement and testimony showing the ownership of the machine, whose duty it was to inspect and keep it oiled, and tending to show the degree of care used in these particulars, serve to differentiate this case from T. & P. Ry. Co. v. Endsley, 103 Tex. 434, 129 S. W. 343, cited by the Court of Civil Appeals. Mr. Gamer testified also that the machine was in good condition prior to the time of the plaintiff's injury and at all times thereafter, and that nothing was done to it in the way of repairing until about two years after the accident.

The defendant made no attempt to show the degree of care exercised in caring for the machine, or that it was ever inspected, other than is shown by the testimony of the manager quoted above. No evidence was offered by the defendant to explain how the accident occurred that did not, in effect, controvert the conclusion that the machine was defective, and present a conflict with the plaintiff's testimony. Certainly the testimony is not conclusive that reasonably careful inspections were made or that the machine was at all times oiled; nor could it be held, as a matter of law, that under the circumstances a defective condition of the machine might not result in personal injury to the one operating it. Washington v. M., K. & T. Ry. Co., supra. The evidence as a whole raised the issues of whether the machine was defective, and whether, if the defendant had used reasonable diligence to inspect the machine or ordinary care to keep it in good running condition, the plaintiff would have been injured. These issues were for the jury, and, together with others, were submitted under a proper general charge. The verdict was for the plaintiff and is supported by evidence. Washington v. M., K. & T. Ry. Co., 90 Tex. 315, 38 S. W. 764; McCray v. Ry. Co., 89 Tex. 170, 34 S. W. 95; G. C. & S. E. Ry. Co. v. Hayden, 29 Tex. Civ. App. 280, 68 S. W. 530; Texas & St. L. Ry. Co. v. Suggs, 62 Tex. 323.

[6] In view of the fact that the Court of Civil Appeals reversed and rendered the judgment of the trial court and made no finding of fact that would defeat recovery, we are of opinion the judgment of the Court of Civil Appeals should be reversed, and that of the trial court affirmed. Beck v. Texas Co., 105 Tex. 303, 148 S. W. 295; Tweed v.

Western Union Telegraph Co., 107 Tex. 253, 166 S. W. 696, 177 S. W. 957.

PHILLIPS, C. J. The judgment as recommended by the Commission of Appeals is adopted; and will be entered as the judgment of the Supreme Court.