## TEXAS & N. O. R. CO. v. BILLINGSLEY et al.

### No. 2896.

Court of Civil Appeals of Texas. Beaumont.

April 11, 1936.

Rehearing Denied May 20, 1936.

Duff & Cecil, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellees.

WALKER, Chief Justice.

The railroad track of appellant, Texas & New Orleans Railroad Company, runs east and west through the town of Waller, Waller county, Tex. The depot is on the south side of the track and the Goodrich hotel on the north side. About 9 o'clock p. m. of the 27th day of May, 1933, for the purpose of going to a barber shop on the south side of the railroad track, A. T. Billingsley walked from the Goodrich Hotel to the public railroad crossing near the depot, which, at that time, was blocked by one of appellant's eastbound freight trains. Billingsley stopped near the crossing for the train to clear the crossing that he might go on to the barber shop. While standing there at the crossing, he was struck by an open swinging door on a refrigerator car in the passing train, fifteen or twenty cars back from the engine, and instantly killed.

This suit was filed by A. M. Billingsley and his wife, Mrs. A. M. Billingsley, the father and mother of the deceased, and Alfred Billingsley and Pauline Billingsley, minors, a brother and sister of the deceased, to recover damages for the death of A. T. Billingsley, alleging generally, as appellees, plaintiffs below, construe their petition, that appellant was guilty of negligence in operating its train with a car door in such a loose or unfastened condition that it swung out from the side of the car while the train was in motion, and that, as a proximate result of this negligence, A. T. Billingsley was struck by the swinging car door and killed. Appellant answered by general demurrer, general denial, and by pleas of six specific acts of contributory negligence against the deceased. The evidence offered by appellees went no further than to sustain the fact conclusions stated above; it failed to show (a) when or how the defects in the door occurred;

(b) the ownership of the refrigerator car with the defective door; (c) how long this car had been in appellant's possession at the time Billingsley was killed; (d) where it was put into the train; (e) from whose possession it was received; (f) and whether, at the time Billingsley was killed, this car had been in appellant's possession a sufficient time for it to discover the defect in the door; (g) there was in evidence no specific fact from which the jury could determine that, in the exercise of ordinary care, it should have discovered the defects in the door before Billingsley was struck and killed. Answering special issues, the jury found against appellant the issues of negligence charged against it by appellees' petition, and acquitted the deceased of all acts of contributory negligence. Appellant has duly prosecuted its appeal from the judgment entered in favor of appellees on the verdict of the jury.

### Opinion.

For the purposes of this opinion, as stated above, we concede appellees' construction of their petition that they pleaded against appellant only general negligence; that they did not allege specific acts of negligence, but negligence only in operating the train with a car door in such an unfastened condition that it swung out from the side of the car; and that they did not allege any particular defect which caused that condition to exist. It is the contention of appellant that appellees pleaded specific acts of negligence, and, therefore, they cannot invoke the maximum of res ipsa loquitur in support of their judgment. If the facts of this case were sufficient to invoke that maxim, appellant's construction of the pleadings, if correct, would merely operate to reverse the judgment of the lower court and to remand the case for a new trial. However, as we have reached the conclusion that the judgment of the lower court must be reversed and judgment here rendered in favor of appellant, we are giving the petition all the intendment claimed for it by appellees.

On the construction we have given appellees' petition, the question presented by this appeal is whether or not the evidence was sufficient as a matter of law to constitute a cause of action against appellant. On authority of Texas & Pacific Ry. Co. v. Endsley, 103 Tex. 434, 129 S.W. 342, this question must be answered in the negative. The facts of that case are the very facts of this case. The facts, which the evidence in that case failed to disclose, are the very facts the evidence in this case failed to disclose. In that case, holding as a matter of law that the evidence was not sufficient to constitute a cause of action against the railroad company, the Supreme Court said:

"The fact that the injury occurred, and that such injury resulted from a defective condition of the defendant's car, is not sufficient to establish the necessary fact that the railroad company was negligent in permitting the door to be in that condition. Gulf, C. & S. F. Ry. Co. v. Kizziah, 86 Tex. 81, 23 S.W. 578; Houston & T. C. Ry. Co. v. Barrager (Tex. Sup.) 14 S.W. 242; Missouri, K. & T. Ry. Co. v. Thompson, 11 Tex.Civ.App. 658, 33 S.W. 718. In the Barrager Case, above cited, damages were claimed for an injury received by a brakeman through the pulling out of a drawhead, and this court said: 'To say that the burden is upon the servant to show negligence upon part of the master when he seeks to recover damages for injuries resulting from defective machinery is but to announce the elementary proposition that the plaintiff must prove his case; and we are of opinion that negligence on part of a railroad company is not to be inferred from the mere fact that a drawhead has become detached in the operation of moving the train. Mobile & O. R. Co. v. Thomas, 42 Ala. 672. So that it seems to us that upon his main proposition the plaintiff has failed in his case.'"

No decision of any court in Texas has been cited to us criticizing the Endsley Case. It was cited by this court as controlling in Texas & N. O. Ry. Co. v. Smith, 285 S.W. 913, 917, and Hawthorne v. Texas & N. O. Ry. Co., 84 S.W.(2d) 1015. Texas Law Review, Vol. XIV, No. 2, February, 1936, p. 277, presents a most interesting note on the Hawthorne Case. It was quoted by us in full in our recent opinion on rehearing in Texas & N. O. Ry. Co. v. Beard, 91 S.W.(2d) 1080. The Endsley Case was also cited with approval by the Fort Worth Court of Civil Appeals in Gulf, C. & S. F. Ry. Co. v. Riordan, 146 S.W. 711, Ft. Worth & D. C. Ry. Co. v. Gatewood, 185 S.W. 932, and Texas & P. Ry. Co. v. Greene, 291 S.W. 929, 931, affirmed by the Supreme Court, 299 S.W. 639; by the Texarkana Court of Civil Appeals in Vernon Cotton Oil Co. v. Catron, 137 S.W. 404, and St. Louis S. W. Ry. Co. v. Tune, 158 S.W. 238, 241; by the

Amarillo Court of Civil Appeals in Gamer Co. v. Gammage, 162 S.W. 980, 988, reversed by the Supreme Court, 209 S.W. 389, but without criticizing the Endsley Case; by the Galveston Court of Civil Appeals in Houston E. & W. T. Ry. Co. v. Hickman, 207 S.W. 550, 551. In Texas & P. Ry. Co. v. Greene, supra, the plaintiff was injured by a swinging door of a passing train; the Court of Civil Appeals distinguished that case from the Endsley Case upon the ground that appellant was guilty of negligence in not inspecting the defective car, and on that distinction affirmed the judgment of the lower court. A writ of error was granted in that case, and in affirming the judgment of the Court of Civil Appeals, the Commission of Appeals gave effect to the negligence found by the Court of Civil Appeals; it was said:

"At the time the door swung out and struck the plaintiff, the train had moved but a few hundred feet from where it had been made up and left standing. These circumstances furnish some evidence of the fact that the door was in the same loose and unfastened condition when the train crew made the inspection they did as it was when it swung out and struck the plaintiff. With this fact found by them, which is presumed to have been done, it was the further province of the jury, in weighing the testimony, to determine that the loose and dangerous condition of the door was discoverable to the defendant and its servants, by the exercise of ordinary care, and that the defendant was negligent in operating its train with one of the cars in the train in that condition."

Appellees would distinguish the case at bar from the Endsley Case on the following grounds: (a) In this case appellant owned and operated the train. There is no merit in this point. The record in neither case raised the issue that the railroad company owned each and every freight car in the train. (b) Appellees contend that the refrigerator car in this case was put in the train at some point west of the town of Waller. That is not a correct construction of the facts. The record shows only that the defective car was switched into the train at some point west of the depot in the town of Waller; under the record, it might have been switched into the train in the town of Waller. There was no evidence upon the issue as to where or when appellant got this car, nor from what company it was received. On this point

the evidence in this case is on all fours with the evidence in the Endsley Case. (c) Appellees would bring this case within the doctrine of the Greene Case, supra, on the ground that the evidence raised against appellant the issue of negligence in inspecting the defective car. Direct and affirmative evidence was offered in the Greene Case raising against appellant the issue of negligence in inspecting the defective car, but there was no evidence on that issue in this case, and on identical facts the Supreme Court said in the Endsley Case that the fact that the injury occurred was not sufficient to support the inference of negligence. (d) We quote as follows from appellees' brief:

"In the Endsley Case there was no evidence showing that the train had been made up and that it was on its way out of the yard to make a run across country and from town to town and no evidence to show that the particular car upon which the door was supposed to be open and swinging had not just been brought in from another road, and thereby it was just as reasonable to suppose that the door came loose while in the possession and control of another railroad as it was that it came loose while in the possession of the appellant in the Endsley Case."

There is no distinction in principle on the facts brought forward by appellant on this proposition and the facts in the case before us. We have given most careful consideration to every point of distinction alleged by appellees and overrule them as without merit.

Appellees began their argument with the statement, "Again the fight is on between Scarborough and Endsley. This time it is a clear-cut contest," referring to Missouri, K. & T. Ry. Co. v. Scarborough, 29 Tex. Civ.App. 194, 68 S.W. 196, cited and distinguished by the Supreme Court in the Endsley Case as follows:

"The case of Missouri, K. & T. Ry. Co. v. Scarborough, 29 Tex.Civ.App. 194, 68 S.W. 196, differs from this case, in that the defect which caused the injury itself told that the servants of the railroad company were negligent in so loading the car as to permit a piece of lumber to project from the car far enough to inflict injury upon one who was lawfully upon the skidway."

Appellees invoke the Scarborough Case in support of their judgment by the following argument:

"That the Scarborough applies to and controls the case at bar is too clear for serious argument. The only difference between the cases is that in the instant case Billingsley was where he, as a member of the public, had a right to be, standing at an intersection where a public street of the town of Waller crosses the railroad, waiting for appellant's train to pass, and at a reasonable safe distance therefrom, under ordinary circumstances, as the jury inferentially found, and justly so, when he was struck and killed by an open swinging door on one of the refrigerator cars located somewhere near the middle of the long freight train. Appellant's employees operating the said train must necessarily be held to know, or by the exercise of ordinary care they would have known, that people were liable to be standing at the public crossings in the town of Waller waiting for the train to pass and that the open, swinging and projecting car door would probably strike and injure or kill them. Therefore, the undisputed facts of the case at bar make out a stronger case for appellees than the Scarborough."

We overrule this contention. The facts of the case at bar are distinguishable from the facts of the Scarborough Case on the ground that the negligence of appellant in that case "consisted in the manner in which its employees had loaded the cars with material which protruded from the cars and caused the injury." (Quotation from opinion of Mr. Chief Justice Hightower in the Smith Case supra.)

Appellees have vigorously attacked the Endsley Case as being unsound; they say:

"The duty resting upon railroads, under the law, with respect to open doors on railroad cars in a train being operated, and with respect to projections in loads on such cars, is identical; railroads are required to use ordinary care to have car doors securely fastened and the same duty to inspect same from time to time to discover any defects in locks or fastenings; and particularly the law requires the exercise of this duty on the part of railroads and its employees in making up a train of cars prior to sending the train out on a run; and such identical duty is required with respect to reasonably safe loading of its cars to prevent projections at such distance beyond the edges of the cars as to endanger the public. To argue that there is any difference either with respect to the duty or with respect to the danger of projections in loads and open swinging doors is to argue an absurdity. The Supreme Court —no doubt through inadvertence and what it thought was a necessity in order to arrive at justice in the Endsley Case—permitted itself to get into such an indefensible position in making the following statement: 'The case of Missouri, K. & T. Ry. Co. v. Scarborough, 29 Tex.Civ.App. 194, 68 S.W. 196, differs from this case [Endsley], in that the defect which caused the injury itself told that the servants of the railroad company were negligent in so loading the car as to permit a piece of lumber to project from the car far enough to inflict injury upon one who was lawfully upon the skidway.' While this statement on the part of the Supreme Court was not in fact necessary in order to distinguish the two cases, the court probably thought it was necessary, or at least regarded it as an additional reason such as would back up and strengthen the real distinguishing features that the court had already pointed out, to-wit, that the cars being operated were in the yard and there was no evidence to show the ownership of the car upon which was the open and swinging door and no evidence to show when it came into the yards or from what road, and, therefore, no evidence to show the ownership.

"The truth is, the evidence in the Endsley Case to show that there was an open or swinging door on one of the cars was so indefinite and flimsy that it is apparent that the Supreme Court was convinced that the claim for damages was not just; and in order to attain justice in the case and deny a recovery it became necessary to distinguish it from the Scarborough, which had been definitely approved by it; but there being some slight evidence, flimsy though it was, that the car door was open, the Supreme Court could not put an end to the case by holding that there was no evidence to show that the door was open. Therefore, in order to attain what the Supreme Court deemed a just end to the Endsley Case, it became necessary to distinguish it from the Scarborough; and after having suggested some reasonable distinctions, such as lack of evidence as to the ownership of the car, as to how long it had been in the yard, also as to how long it had been in the possession of the railroad company, that the car was being pushed in the yard, which indicated that it had probably just been brought in and may have come from another road, or that the break in the door

may have occurred while it was on some other road—all or any of which reasons would have been amply sufficient upon which to base the desired distinction—it then went too far in assigning the suggested additional reason for such distinction based upon a supposed difference between a projection in a load on a car and an open swinging door."

From the State report of the opinion of the Supreme Court in the Endsley Case, 103 Tex. 434, 129 S.W. 342, we take the following summary of the brief of defendant in error:

"Hart, Mahaffey & Thomas, for defendant in error.—The rule res ipsa loquitur, in Texas, is that where a duty is owing by the defendant, and the thing which inflicted the injury is shown to be under the management of the defendant or its servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the managemet use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care; and it is not limited to cases where some contractual relationship exists. In order to sustain the verdict, appellee is not forced to rely solely upon the doctrine of res ipsa loquitur, because there is, in this case, affirmative evidence of negligence. The natural and probable result of running a train at a high rate of speed along a track constructed upon a curve, near to and on the outside of which is a pathway, which the company had licensed the public to use, and which was in almost constant use by the public, with a door or other thing hanging loose and swinging from one of the cars, would be to injure persons in said pathway; that is, it would be negligence. Washington v. Missouri, K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764; McCray v. Galveston, H. & S. A. Ry. Co., 89 Tex. 168, 34 S.W. 95; Howser v. Cumberland & P. Ry. Co., 80 Md. 146, 30 A. 906, 27 L.R.A. 154, 45 Am.St.Rep. 332."

It thus appears that the Supreme Court had before it and overruled the very contentions now advanced by appellees.

The maxim res ipsa loquitur does not support appellees' judgment for the same reason given by Judge Brown in denying its application to the facts of the Endsley Case:

"If the maxim, 'Res ipsa loquitur,' be applicable to this character of case, the evidence must suggest the character of the negligent act; it is not sufficient that it may raise a suspicion of negligence of some kind."

It follows that the judgment of the lower court should be reversed and judgment here rendered in favor of appellant; it is accordingly so ordered.

On Rehearing.

We quote as follows from appellees' motion on rehearing, "Therefore, inasmuch as there may arise some doubt either on the part of the Supreme Court or on the part of counsel for appellant as to what this Honorable Court has really found and held in this respect, that is, as to whether it holds there is no evidence to require the submission to the jury of the issue of negligence, or whether it has found and held that the evidence is insufficient to support the jury's verdict, we urgently request that in your ruling on this application for rehearing you make it clear and definite that you have held that 'there was no evidence to go to the jury, that is, no substantial evidence requiring that the issue of negligence be submitted to the jury', if that be your holding, as we understand it is from a very careful reading of the opinion"; in compliance with this request we expressly find "there was no evidence to go to the jury, that is, no substantial evidence requiring that the issue of negligence be submitted."

The motion for rehearing is in all things overruled.